**WICHITA FALLS GRAIN COMPANY, et al., Appellants,**

**v.**

**TAYLOR FOUNDRY COMPANY, et al., Appellees.**

No. 2–82–051–CV.

Court of Appeals of Texas, Fort Worth.

April 7, 1983.

Rehearing Denied May 12, 1983.

Law, Snakard & Gambill and Thomas H. Law, Jonathan Kerr, Fort Worth, Gibson, Ochsner & Adkins and S. Tom Morris, Amarillo, for appellants.

Cowles, Sorrells, Patterson & Thompson and R. Brent Cooper, Mark A. Stinnett, Dallas, Fillmore, Purtle & Lee, Wichita Falls, for appellees.

Before HUGHES, JORDAN and ASH-WORTH, JJ.

## OPINION ON MOTION FOR REHEARING

PER CURIAM.

Our opinion in this case of February 10, 1982 is withdrawn and the following is substituted therefor.

This is an appeal from a judgment holding that title to certain real property held by appellants, Wichita Falls Grain Company and Fort Worth & Denver Railway Company, reverted to Taylor Foundry Company because of the occurrence of a condition subsequent to which the property was subject.

We reverse on the ground that there was no proof of the occurrence of any event upon which reverter was dependent.

The real property in issue is an easement. The easement was created by a 1914 warranty deed by which the Wichita Mill and Elevator Company granted, for the operation of switch tracks over its property, a right of way to the Wichita Valley Railway Company and the Wichita Falls Railway Company. The tracks were to serve a grain elevator belonging to the grantor, and the easement was subject to the following condition set out in the deed:

"It is a part of the consideration herein that the above described property is to be used by the grantees for the purpose of operating thereon a Switch tract (sic) to serve the Elevator of the Wichita Mill & Elevator Company, [a]nd for no other purpose. And, should the switch be removed and the property abandoned as a right of way for such track then the above described-tracts of land shall revert to the Wichita Mill & Elevator Company and the title to be re-vested in them."

Appellee Taylor Foundry Company is the successor in interest to the south half of the servient estate held by Wichita Mill and Elevator Company at the time of the making of the 1914 deed containing the above recited condition. Appellants Wichita Falls Grain Company and the Fort Worth & Denver Railway Company are the successors in interest to the easement created by the 1914 deed. All parties agree that their rights and duties relative to the disputed property stem from and are governed by the terms of the 1914 deed.

This controversy arose over a question as to Taylor Foundry's right to use the property subject to the easement, to the exclusion of appellants. Appellants filed suit alleging that Taylor Foundry, and its owner Lloyd J. Taylor, Jr., had improperly dispossessed appellants of their right of way over the part of the servient estate to which Taylor had become record owner. At trial judgment was rendered for Taylor upon the jury find-

ings that appellants had abandoned any right to the easement according to the condition contained in the deed. The jury agreed with appellees' contention, finding by way of special issues that Taylor had not wrongfully dispossessed appellants for the reason that appellants had removed the "switch" and abandoned the property as a right of way, thereby causing the property to revert to the title holder of the servient estate.

Appellants predicate their appeal on points of error which contend that the court erred in failing to grant appellants an instructed verdict or motion for new trial on the grounds that the jury findings were based on no evidence or, alternately, insufficient evidence. In addition, appellants argue that the court erred in failing to instruct the jury that appellees' burden on proof was to convince the jury of the occurrence of the condition subsequent by "clear and convincing" evidence.

We first consider appellants' contention that there was no evidence adduced at trial that the "switch" was removed, a finding necessary to support the court's determination that the easement in question reverted to Taylor. The record establishes that there were two switch tracks which ran the length of the easement, and that these tracks served the grain elevator located on the north half of the servient estate, property not in issue here, until 1974 or 1975. These tracks were connected to the railway's main line at two points, one to the west of the elevator by way of a switch, and one to the east of the elevator, also connected by way of a switch. The evidence showed that as of 1974 or 1975 one of the two tracks had been partially removed by the railroad company and that the other track serving the elevator had been damaged by a derailment and never repaired. Sometime thereafter, the west switch was taken up, along with parts of the adjoining main line and switch track due to the construction of a freeway over that particular spot. This was by act or action of "the sovereign" over which none of the parties to the suit had any control.

■ In determining whether there was evidence of removal of "the switch" as contemplated in the deed, we must determine the meaning of the term "switch" as used therein. It initially occurs that the term could possibly refer to the east switch, the west switch, the switch track or all three. A closer look makes it clear that the term "switch" as used in the deed is distinguished therein from the term "switch track". We hold that removal of part or all of the switch track is not evidence of removal of the "switch" as that term is used in the deed. We must therefore decide whether the east switch, west switch, or both were removed. As noted earlier, the west switch was actually removed to make way for the construction of a freeway project. While we do not feel that the removal of the west switch for the freeway could be charged to appellants, we note that the evidence is uncontradicted that the removal of the west switch would not totally defeat the purpose of the grant in that the easement could still be used to service the grain elevator by use of the east switch alone.

■ It is well settled that the law does not favor forfeitures, that a deed will be construed to avoid a forfeiture if possible, and that forfeiture provisions will be construed most strongly against the grantor. 25 Tex.Jur.2d § 6 (1961). In this case, we feel that the deed's requirement of forfeiture if "the switch be removed" means such removal of the switch as would render the tracks unusable for the purpose of the easement as spelled out in the deed. The deed clearly says that the easement is for the purpose of serving the grain elevator located on the north half of the servient estate. The evidence clearly shows that although the tracks had not actually been used since 1974, the entire remaining line, if in repair, could service the elevator by way of the east switch alone. Because the east switch could by itself provide the switching mechanism necessary for operation of the tracks, we hold that a reasonable construction of the deed, in light of its stated purpose, would require the removal of the east

switch before a forfeiture could be said to have occurred. *See J.W. Link v. Texas Pharmacal Company,* 276 S.W.2d 903 (Tex. Civ.App.—San Antonio 1955, no writ) and cases cited therein.

Our next determination, therefore, is whether there had been a removal of the east switch. It is uncontroverted that the east switch, in principal part, remained in place at all times. Appellants offered as evidence of removal testimony that the "switch point", an integral component of this track switch, was temporarily removed. They argue that a fact question thereby arose as to contractual removal. We disagree. Uncontroverted evidence shows that although the "switch point" was at one time removed, it was only for a period of ten days. The "switch point" was replaced and thereafter continued intact and the switch was intact at the time this suit was filed. We hold that the term "removal" as contemplated in the deed requires something more akin to permanent removal. The removal of a component of the switch for a mere ten days is no evidence of removal; indeed, the swift replacement of the part amounted to evidence of intent *not* to remove.

We sustain appellants' point of error contending that there was no evidence of removal of the switch. Because removal of the switch was an essential element to be proved by Taylor Foundry in its attempt to show reverter of the easement premises, we could reverse on that ground alone and decline to discuss appellants' other points. We take occasion, however, to note that if we err in our "no evidence" holding then, and in that event, we would reverse and remand on appellants' insufficient evidence point.

We also overrule appellee Lloyd Taylor, Jr.'s contention, briefed for the first time on appellees' second motion for rehearing, that should this cause be reversed for further proceedings, such disposition should be only as to Taylor Foundry Company and not as to Lloyd Taylor, Jr. individually. We find that the evidence, including the admissions of Lloyd Taylor, Jr. that any acts of Taylor Foundry Company were done at his instruction raised the issue of Taylor's individual liability in light of the holdings in *Earthman's, Inc. v. Earthman,* 526 S.W.2d 192 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) and cases cited therein which hold that officers of corporations who actively participate with the corporation in performing a tortious act might be personally liable as a joint tortfeasor. Appellants properly asked for judgment against both appellees, defendants below, by way of their motion for instructed verdict and have properly preserved error on appeal, as to both appellees.

We hold that title to the easement remains in appellants. Although we reverse on a "no evidence" point of error, we order that this case be remanded for a new trial, not inconsistent with this opinion, so that the issue of damages sought by appellants Wichita Falls Grain Company might be settled. Tex.R.Civ.P. 434. Costs of this appeal are assessed against appellees.