**PERRY ROOFING COMPANY, Appellant,**

v.

**Eugene D. OLCOTT, Appellee.**

No. 2–86–007–CV.

Court of Appeals of Texas, Fort Worth, Texas.

Dec. 31, 1986.

Steve C. Cocanower, Fort Worth, for appellant.

Leeper, Priddy & Chovanec, and Laurance Priddy, Fort Worth, for appellee.

Before HOPKINS, FARRIS and KELTNER, JJ.

## OPINION

HOPKINS, Justice.

This is an appeal from a judgment entered in accordance with a jury verdict finding that appellee Olcott had suffered damages as a result of appellant Perry Roofing Company's failure to install a new roof in a good and workmanlike manner in accordance with its written contract with appellee. Appellee brought suit against appellant and Aetna Casualty and Surety seeking damages for a leaky roof. The suit against appellant alleges improper installation of a new wood shake shingle roof. The suit against Aetna was based on a contract of insurance and alleged damage to the roof caused by hail. The jury found there was no hail damage. Aetna is not a party to this appeal. The jury found that appellee had been damaged in the sum of $15,000.00 as a result of appellant's improper installation of the roof. The trial court entered judgment in accordance with the jury verdict, but ordered that $1,134.02 of the award be paid to Aetna, representing the amount Aetna had paid appellee for roof damage.

Appellant (Perry) alleges various errors asserting there is no evidence or insufficient evidence to support the verdict, comparative causation, estoppel and waiver, and negligence in appellee (Olcott) not finding and reporting the defects sooner. Appellee asserts two counterpoints complaining of the $1,134.02 award to Aetna and the calculation of prejudgment interest at the rate of six percent per annum.

We grant appellee's second counterpoint, overrule appellee's first counterpoint, and overrule all of appellant's points of error. Accordingly, we affirm the trial court's judgment except in its award of prejudgment interest. In granting appellee's second counterpoint, we reverse and render awarding prejudgment interest in the amount of ten percent to appellee.

Late in 1979 Perry contracted with Olcott to install a new shake shingle wood roof on Olcott's home. Shortly after installation of the roof, Olcott noticed what he assumed were paint stains on the ceiling but did not notice actual water leaks from the roof until a wind, hail and rain storm May 8, 1981, when water poured through the ceiling. Olcott thought that hail had damaged the roof and accordingly made a claim on his homeowner's insurance policy. His insurance carrier, Aetna, made some payment for the alleged damage but eventually refused to pay further, claiming that any leaks were due to faulty installation of the roof and not hail damage. Olcott then made several attempts to contact Perry about the leaking roof. Perry claimed that the roof was properly installed and refused to correct the problem.

In his first two points of error Perry alleges that there is no evidence or insufficient evidence to support the jury's finding that $15,000.00 was a necessary or reasonable cost of repairing damages caused by Perry.

In examining a no evidence point of error this court considers only the evidence and inferences which tend to support the findings of the jury and disregards all the evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985). Any evidence tending to support the verdict requires this court to overrule a no evidence point of error. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). When considering an insufficient evidence point this court considers all the evidence in the case both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and

preponderance of the evidence as to be manifestly unjust. *See Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985). If the court so determines, the findings should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

There was testimony from a professional roofer, Watts, that the roof could be repaired by inserting small tin shingles under the "cracks" between the shakes, but, to insure no further leaks, the roof should be replaced. Watts and an Aetna claims adjuster with years of experience in examining roofs both testified that the roof leaked because it was improperly installed. Like Watts, the adjuster testified that the only way to truly fix the roof was by replacement. Watts testified that the replacement cost of the roof would be from $15,000.00 to $18,000.00. The adjuster estimated replacement cost at $175.00 to $200.00 per square. There was testimony estimating that the roof consisted of approximately 80 squares.

Perry asserts in his brief that the testimony suggests replacement of the roof was not necessary. This assertion is not supported by the record. While at one point Watts states that the known existing leaks could be repaired with the small tin shingles, he continues his testimony saying that the only way to fully repair the roof would be to re-do it. Repair and replacement are not necessarily alternative remedies for the same problem. The testimony demonstrated that repair could cure leaks at known specific locations in the roof but that replacement would be necessary to remedy both discovered and undiscovered defects.

The testimony as set out above is sufficient evidence from which the jury could determine that the roof should be replaced and that the damages suffered by Olcott as a result of Perry failing to install the roof in a good and workmanlike manner was $15,000.00. We do not find that the jury's finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, therefore, Perry's first and second points of error are overruled.

Perry alleges in the third point of error that the trial court erred in failing to submit a special issue regarding comparative causation. We overrule this point of error because appellant did not properly preserve the point for review. The record before this court demonstrates that Perry objected to question 20. However, the record further reflects that Perry did not submit the substitute special issue which he urged. Instead he merely stated "we need another subdivision before the 100%." Perry, in complaining of an omitted special issue which establishes an element of his affirmative defense of comparative causation must request the trial court in writing to submit that issue. *See Woods v. Crane Carrier Co., Inc.*, 693 S.W.2d 377, 379 (Tex.1985); TEX.R.CIV.P. 279. *See also* 3 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS sec. 12.32.2 (rev.1983).

Perry's fourth point of error alleges that the trial court erred in entering judgment for Olcott in that the jury's affirmative finding that Olcott gave defendant reasonable notice to cure the defect is against the great weight and preponderance of the evidence. Again, we disagree. This case was submitted on a breach of warranty theory under both the common law and statutory Deceptive Trade Practices Act. However, recovery was had only on the contract claim. There was no recovery under the Deceptive Trade Practices Act. Therefore, notice is immaterial because it is not an element of a contract cause of action. The elements of a contract action are as follows: the existence of a contract, execution, performance, and breach. *Albritton v. Henry S. Miller Co.*, 608 S.W.2d 693 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Notice need only be proved, under these facts, if something additional is demanded, such as treble damages under the Deceptive Trade Practices Act. This being a contract case, and not a Deceptive Trade Practices case, notice is not at issue. Therefore, even if the jury's answer to the

special issue is not supported by the evidence, the answer can be disregarded because it is immaterial. *See C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

Point of error five, also dealing with notice, is overruled. Notice, as discussed above, is not an element of a contract cause of action.

In point of error six Perry asserts that Olcott, as a matter of law, waived his claim against him by filing a claim with the insurance company. Point of error seven states that a jury finding that Olcott did not waive his claim against Perry is against the great weight and preponderance of the evidence. Point of error eight asserts that the trial court erred in failing to submit an issue based on estoppel when it was properly presented by the evidence.

■ Regarding point of error six, we must examine the record for evidence supporting the jury finding while disregarding all contrary evidence. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). Regarding the point of error seven, we must consider both the evidence supporting the waiver theory as well as evidence disproving waiver. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Considering supporting and contradicting evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, we must sustain the point, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate,* 244 S.W.2d at 661.

There is no support for a waiver argument. Perry's brief cites us to *Rosestone Properties, Inc. v. Schliemann,* 662 S.W.2d 49 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). In *Rosestone,* the San Antonio court properly stated that "waiver consists of a voluntary act by which a known right is intentionally relinquished." *Id.* at 53.

There is no evidence in the record to show that Olcott relinquished any rights against Perry. Instead the record reflects that Olcott originally thought his roof leaked because of hail damage. As soon as he became aware of installation irregularities he began to press Perry to rectify the situation. Contrary to the points raised by Perry, the evidence shows that Olcott actively pursued his claim against both Aetna, for possible hail damage, and Perry, for faulty installation. We overrule points of error six and seven.

■ Likewise there is no estoppel issue in this case. The elements constituting equitable estoppel were aptly stated by the Texas Supreme Court in *Gulbenkian v. Penn,* 252 S.W.2d 929 (Tex.1952). There the court stated:

> In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

*Id.* at 932.

The record is entirely devoid of conduct on the part of Olcott giving rise to estoppel. The evidence presented by Olcott indicates he began to actively pursue his claim against Perry as soon as he became aware of possible faulty installation. Although Perry testified Olcott told him there were no leaks the jury is privileged to disbelieve Perry's testimony and believe the testimony of Olcott. We overrule point of error eight.

Perry's final points of error, numbers nine and ten, concern denial of his requested instruction on contributory negligence on the part of Olcott in failing to discover the defects.

■ The transcript submitted on appeal contains no requested issue regarding failure to discover a *defect*. Requested instruction 16d inquires as to Olcott's negligence in "failing to discover *leaking*." [Emphasis added.] Perry asserts that the trial court committed error in denying a requested instruction on the issue of negligent failure to discover *defects*. However, the trial court denied an issue relating to negligent failure to discover *leaks*. The requested special issue is irrelevant and was properly refused. On appeal, now, appellant seeks to equate "leaks" (the language of his special issue) with "defects" (the language of his point of error). The two are not comparable nor synonymous. A leak may be from any source. A defect implies some faulty workmanship. A defect may or may not result in a leak. Simply put, we reject Perry's attempt to use the two terms interchangeably. There being no requested issue to support this point of error, we overrule point of error nine.

■ Perry's final point of error alleges that there is insufficient evidence to support the jury's finding that the date May 8, 1981 was the date that Olcott knew or should have known that the roof was defective. This point asserts inferentially that because Olcott should have discovered the defect earlier the statute of limitation period began to run before May 8, 1981.

Perry asserts that the statute of limitations had run when Olcott filed this action on May 3, 1983. The record reflects that the installation of the roof was completed in January of 1980. A four year statute of limitations applies for this action based on contract. TEX.CIV.PRAC. & REM. CODE ANN. sec. 16.051 (Vernon 1986). Assuming arguendo that Olcott should have discovered the defects earlier than the jury determined, the earliest he could have discovered the defect was when the roof was completed, January 1980. The four year statute would not have run until January of 1984. Therefore, the issue of when the defect in the roof should have been discovered is of no consequence to this lawsuit because the action was undeniably brought within the statutory period set by the Civil Practice and Remedies Code.

This court does note that Perry gave Olcott a certificate purporting to be a two year warranty. This document does not alter the court's holding for it is a two year limited warranty for "injury to said roof resulting solely from ordinary wear and tear of the elements...." This limited warranty must be compared with the contract language itself where Perry warranted that "[a]ll work to be performed in a workmanlike manner...." The contract also contains a merger clause stating that the contract cannot be altered by subsequent agreements. We hold the language in the contract itself is the operative term. The two year limited warranty does not govern this action. By its very language the limited warranty covers damage only from wear and tear. It does not supersede the other express workmanship warranty contained in the contract.

■ Olcott brings two counterpoints. First he asserts that the $1,134.02 paid by Aetna should not have been subtracted from the judgment and awarded to Aetna because that sum was for interior damage and not roof damage. Olcott, in his original petition, prayed for $20,000.00 damages to his roof (replacement value) and $5,000.00 for interior damage. The jury awarded $15,000.00 as the amount of "[d]amages ... caused by the failure ... of Defendant, Perry ... to complete its contract with Plaintiff...." This special issue does not distinguish between roof and interior damage. With evidence on both types of damage, this court must assume that the jury's award includes both roof and interior damages. Olcott should not be allowed a double recovery for the interior damage already compensated by Aetna. We therefore hold that this amount was properly subtracted from the single award for both interior and exterior damage.

Appellee's second counterpoint asserts error by the trial court in calculating prejudgment interest at six percent. Appellee argues that the proper measure of prejudgment interest is instead ten percent under

the Supreme Court's holding in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985).

█ Appellee filed a motion for judgment on the jury's verdict and a suggested judgment. In the suggested judgment, appellee requested postjudgment interest at the rate of ten percent and prejudgment interest at that same rate. The trial court granted the motion for judgment on the verdict and entered judgment. However, the court awarded the appellee prejudgment interest at a rate of six percent. Though it is not disclosed through the record, such an award could only have been made under TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Pamph.Supp.1986) (hereinafter "section 1.03").

Section 1.03 provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts *ascertaining the sum payable,* commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

*Id.* (emphasis added).

Under the facts presented in this appeal, an award of prejudgment interest under this statute is improper because this statute simply supplies an implied interest rate to a contract where that contract fixes the amount of damages. Case law under the statute, therefore, requires that the contract itself set out a sum payable or that a fixed sum can be readily determined from the contract. Though this requirement has always been liberally construed, *see La Sara Grain v. First Nat. Bank of Mercedes,* 673 S.W.2d 558 (Tex.1984), it is still necessary that "the contract provides the conditions upon which liability depends and *fixes a measure by which the sum payable can be ascertained with reasonable certainty, in the light of the attending circumstances." Id.* at 567 (emphasis added). *Federal Life Ins. Co. v. Kriton,* 112 Tex. 532, 249 S.W. 193 (1923). Although this cause of action is based upon a contract, it does not present a situation where the contract itself provides a sum ascertainable upon which to award interest because the suit is for replacement value of the roof as well as for interior damage resulting from breach of contract. Therefore, the judge's award of prejudgment interest under section 1.03 was improper.

This court must now decide two questions. First, can the trial court award prejudgment interest in a contract action where the contract itself does not establish the measure of damages? Second, if a court can award prejudgment interest, what interest rate will apply?

█ Prior to the *Cavnar* decision, this court's answer to the first question would be "no". The Supreme Court in *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897) stated that the award of prejudgment interest is proper only in those classes of cases where the measure of damages was fixed at a particular time, and where there was not considerable latitude in determining the amount of recovery. *Id.* 40 S.W. at 11. The *Cavnar* court notes that the *Watkins* decision created many legal fictions, making the award of prejudgment interest unreasonably arbitrary. The *Cavnar* court concludes that "[t]he distinctions drawn between [cases cited awarding prejudgment interest] and personal injury cases [not awarding prejudgment interest] are illogical because the measure of recovery for damages in a personal injury action is no more uncertain and unliquidated than that in many other tort and contractual disputes where prejudgment interest has been allowed." *Cavnar,* 696 S.W.2d at 553. This court recognizes that *Cavnar* involved an action for personal injuries. However, all of the policy reasons which the Supreme Court cites in favor of awarding prejudgment interest in personal injury actions apply with equal force to contract actions. Therefore, this court holds that a trial court may award prejudgment interest in a contract action where the contract itself does not fix the amount of damages.

█ This court must now determine the rate to be used in computing prejudgment interest. The *Cavnar* court held:

[A]s a matter of law, a prevailing plaintiff may recover prejudgment interest

[which] ... shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of TEX.REV.CIV.STAT.ANN. art. 5069–1.-05, sec. 2 (Vernon Supp.1985).

*Id.* at 554. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, sec. 2 (hereinafter section 1.05, section 2) states that the postjudgment interest rate on judgments is a floating rate between ten and twenty percent determined by the interest rate on 52 week United States treasury bills. *Id.* The trial judge determined the postjudgment rate of interest on the day of judgment under section 1.05 to be ten percent.[1] This court, therefore, reverses and renders on appellee's second counterpoint instructing the court to enter judgment with prejudgment interest at the rate of ten percent, as determined under section 1.05.

Therefore, the court affirms the trial court below on all points of error and counterpoint one. We reverse and render the trial court on counterpoint of error two and order prejudgment interest to be computed in accordance with section 1.05, at the going postjudgment rate at the time of the judgment, ten percent.

---

**1.** This court notes that the only discretionary power of the judge in awarding prejudgment interest is in his decision of whether or not to award interest. Once this decision is reached, he must award interest at the rate computed under section 1.05. He is wholly without authority to award interest at a higher or lower rate. *See Matthews v. DeSoto,* 721 S.W.2d 286 (Tex.1986) (per curiam opinion refusing writ of error for nonreversible error in *DeSoto v. Matthews,* 714 S.W.2d 133 (Tex.App.—Houston [1st Dist.] 1986)).