TAYLOR FOUNDRY COMPANY, and Lloyd J. Taylor, Jr., Appellants,

v.

WICHITA FALLS GRAIN COMPANY, n/k/a Attebury Grain, Inc. and Fort Worth & Denver Railway Company n/k/a Burlington Northern Railroad Company, Appellees.

No. 2–00–172–CV.

Court of Appeals of Texas, Fort Worth.

June 21, 2001.

See also 649 S.W.2d 798.

Cowles & Thompson, P.C., and Andrea Kuntzman Cataland and Sim D. Israeloff, Dallas, for Appellant.

Banner, Briley & White, L.L.P., and Jack G. Banner, Wichita Falls, for Appellee, Attebury.

McDonald Sanders, P.C., and Richard C. DeBerry, Fort Worth, for Appellee, Burlington Northern.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Appellants Taylor Foundry Company (Taylor Foundry) and Lloyd J. Taylor, Jr. (Taylor) appeal the trial court's judgment granted in favor of Wichita Falls Grain Company n/k/a Attebury Grain, Inc. (Attebury) and Fort Worth & Denver Railway Company n/k/a Burlington Northern Railroad Company (Burlington Railroad). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1980, Attebury filed suit against Taylor Foundry for access to and usage of a railway easement it owned on Taylor Foundry's property. In 1983, we held that title to the easement was in Wichita Falls Grain Company n/k/a Attebury. *Wichita Falls Grain Co. v. Taylor Foundry Co.*, 649 S.W.2d 798, 801 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (op. on reh'g). However, Taylor Foundry still prevented Attebury from accessing and utilizing the railway easement to load railroad cars with grain, the purpose for which it was created. Attebury filed suit seeking money damages for the amount it lost by not being able to load "large-unit" [1] assemblies of cars because of Appellants' interference with the use of its easement. Attebury contended that it suffered a loss of $100 per car by not being able to use its easement to load more rail cars because it could not receive the price differential given by the railroad for large-unit cars.

On January 18, 2000, the jury returned a verdict in the amount of $345,000 in damages for the loss in the price differential. The trial court entered judgment on the jury's verdict and awarded prejudgment interest in the amount of $243,677.73.

### LEGAL AND FACTUAL INSUFFICIENCY

In their first, third, and fourth points, Appellants argue that the evidence is legally and factually insufficient to support: (1) the jury's finding that they unreasonably denied Attebury's reasonable and necessary enjoyment of the easement between February 15, 1984 and March 23, 1998; (2) the jury's finding that Appellants' conduct proximately caused Attebury's damages; and (3) the jury's award of $345,000 for differential charges accruing between November 30, 1984 and August 8, 1998.

### Standards of Review

#### A. Legal Sufficiency

In determining a "no-evidence" point, we are to consider only the evidence and in-

---

1. A "large-unit" train was one that had fifty-two or more railroad cars.

ferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Cont'l Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

### B. Factual Sufficiency

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert.*

*denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

### DENIAL OF ACCESS TO EASEMENT

■ In their first point, Appellants argue that the evidence is legally and factually insufficient to support the jury's finding that they unreasonably denied Attebury's reasonable and necessary enjoyment of the easement. First, Appellants argue that Attebury's claims that occurred between February 15, 1984 and November 11, 1984 are barred by the statute of limitations. However, as Appellants point out, the trial court did not enter judgment granting Attebury the damages awarded by the jury for that time period, but noted that the award was barred by the statute of limitations. Therefore, since no damages were assessed against Appellants for this time period, Appellants' argument is moot.

■ Second, Appellants contend that they did not unreasonably interfere with Attebury's reasonable and necessary use of its easement between November 11, 1984 and April 23, 1998. An easement confers upon the dominant estate holder the right to use the land of the servient estate holder for a specific purpose. A servient estate holder cannot interfere with the right of the dominant estate holder's use of an easement for the purpose for which it was granted or sought. *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex.1966); *McDaniel v. Calvert*, 875 S.W.2d 482, 485 (Tex.App.—Fort Worth 1994, no writ). Any use by the servient estate holder that interferes with the exercise of the dominant estate holder's rights must yield. *McDaniel*, 875 S.W.2d at 485.

Taylor testified that he knew that part of the foundry property was encumbered by an easement when he purchased it. The purpose of the easement was to operate a switch track to serve the grain eleva-

tor. Appellants testified that they did not prevent Attebury from access and use of the easement. Specifically, Charles Meador, the general manager and current owner of Taylor Foundry, testified that he allowed surveyors onto the property every time Attebury asked permission and allowed Attebury onto the property on many occasions. However, Meador also testified that the property was secured with fences and locked at all times and that anyone, including Attebury, needed permission to gain access to the property the easement was on. Sam Attebury testified that he made many requests including written requests to Lloyd Taylor for access to the easement, but each request was denied by Taylor. Ed Laur, Attebury's vice president, also testified that Meador told him that he would "not do anything to let [Laur] get on that property."

Third, Appellants contend that the acts or omissions that occurred after 1989 are not attributable to Taylor Foundry or Taylor, but only to Meador. However, Taylor testified that even after Meador took over the operations at the foundry, Taylor remained the property owner, and the property remained in his individual control. Taylor also testified that, although Meador did not tell him that he was putting a lock on the fence to deny access to Attebury, Meador had his "permission" as the land owner. Taylor further testified that he and Meador discussed putting a concrete block fence around the easement and that he agreed with the decision to build the fence. Taylor testified that he did not intend to open the gates to the property to let Attebury rebuild the railroad tracks on its easement. Finally, Taylor conceded that whatever Taylor Foundry had done regarding the easement was done because he ordered or instructed it to be done. After reviewing all the evidence in favor of the jury's findings, we hold that there is some evidence to support the jury's find-

ings and damages award. *See Orozco,* 824 S.W.2d at 556. Furthermore, after reviewing all the evidence, we cannot say that the evidence supporting the findings is so weak or the evidence to the contrary is so overwhelming that the jury's verdict should be set aside and a new trial ordered. *See Garza,* 395 S.W.2d at 823. We overrule point one.

### PROXIMATE CAUSE

■ In their third point, Appellants argue that the evidence is legally and factually insufficient to support the jury's finding that their conduct proximately caused Attebury's damages. Specifically, Appellants argue that no proximate cause existed because the evidence established that Attebury has had the ability to ship larger trains since 1984.

■ Proximate cause is composed of foreseeability and cause in fact. *Leitch,* 935 S.W.2d at 118. The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). An injury is foreseeable if a person of ordinary intelligence should have anticipated the danger created by his negligent act or omission. *Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 737 (Tex.1998).

Here, the evidence demonstrates that Appellants prevented Attebury from using its easement. Because Attebury was unable to use its easement it was unable to load enough cars to get the $100 per car price differential. Appellants argue that the evidence, including five bills of lading, demonstrates that Attebury could in fact load grain in trains of fifty-two cars or more. However, Laur and Bobby Richardson, Attebury's office manager, testi-

fied that the shipments cited by Appellants were special shipments that it was able to make by using the railroad's main yard located some distance away. Furthermore, Richardson testified that loading the "large-unit" cars in that manner was not something that Attebury was able to do absent the special circumstances when it had a client that was willing to pay the extra cost and expense associated with loading "large-unit" cars without the access to its easement and the tracks thereon. Richardson also testified that Attebury was only able to assemble larger trains by using the railroad's switching yards. Greg Fuller, Attebury's grain elevator manager, testified that it was impossible to load sixty cars in one day without the track on the easement. This is consistent with additional testimony by Laur that without access to its easement, Attebury would only be able to load the "large-unit" cars by incurring multiple switches at a separate charge per car. Laur testified that the railroad charged $100 to $175 per car for each extra switch and that at least two switches would be necessary to load enough cars to get the $100 price differential per car. Therefore, it would cost Attebury more to use the switching yard than it would gain from getting the price differential for larger trains.

This testimony does not contradict the evidence that demonstrates that Appellants interfered with Attebury's use and enjoyment of its easement and was the cause in fact of Attebury's damages. The evidence does not support Appellants' contention that the evidence was legally and factually insufficient to support the jury's implied finding that Appellants' actions were the proximate cause of Attebury's damages. *See Holt v. Ray*, 435 S.W.2d

568, 571 (Tex.Civ.App.—Eastland 1968, no writ). The evidence clearly supports the jury's implied finding that Appellants proximately caused Attebury's damages by interfering with the use of its easement. *See Prudential Ins. Co. of Am.*, 896 S.W.2d at 161. We overrule point three.

## LAUR'S TESTIMONY AND SPOLIATION

In their fourth point, Appellants argue that the evidence is legally and factually insufficient to support the jury's award of $345,000 for the differential charges that accrued between November 30, 1984 and August 8, 1998.[2] However, Appellants argue, in this point, that the trial court erred by admitting Laur's testimony and for refusing to submit a spoliation instruction.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 241–42.

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *see also Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997). Furthermore, an abuse of

---

**2.** Although Appellants phrase this point in terms of legal and factual sufficiency, they assert that the trial court erred by admitting testimony and by refusing a requested jury question; therefore, we review this for abuse of discretion. *See Laprade v. Laprade*, 784 S.W.2d 490, 492 (Tex.App.—Fort Worth 1990, writ denied).

discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

## Laur's Testimony

■ First, Appellants contend that the court erred in admitting Laur's testimony because, to the extent it was lay testimony, it was inadmissible hearsay. Laur has a bachelor's degree in finance, a master's degree in business administration, and has been in the grain business for twenty-seven years. Laur testified that he worked for Attebury in all aspects of shipping grain by rail for the entire time it has tried to gain access to its easement. This experience includes dealing with railroad documents, learning freight rates, the logistics of grain movement, gathering information about freight charges, and supervising others who perform those tasks under his direction and control.

Laur testified regarding his personal knowledge of events that were pertinent to the suit, such as describing the manner in which Appellants denied Attebury's access to the easement. Laur also testified regarding his personal knowledge about price differentials and the amounts that the railroad had charged for "small-unit" versus "large-unit" shipments. The testimony of a lay witness that is in the form of opinions or inferences is permissible if it is rationally based on his perception and helpful to a clear understanding of his testimony or the determination of a fact in issue. Tex.R. Evid. 701. To the extent that Laur testified as a lay witness, his testimony was based on personal knowledge and was not impermissible hearsay.

■ Second, Appellants argue that the court erred in admitting Laur's testimony, to the extent it was expert testimony, because Attebury failed to comply with the discovery rules by disclosing the general substance of Laur's mental impressions and opinions and a brief summary of the basis for the opinions. *See* Tex.R. Civ. P. 194.2(f)(3). Attebury argues that Appellants' argument is disingenuous: because Laur had been designated as an expert witness since approximately 1994; because rule of civil procedure 194.2 did not come into effect until 1999 after Laur had been designated; because Appellants deposed Laur after he was designated; and because Laur's testimony at trial was consistent with his deposition testimony.

■ The purpose of requiring disclosure of the expert's testimony before trial is to give the opposing party sufficient information about the expert's opinions to permit the party to prepare to cross-examine the expert and to prepare rebuttal evidence with their own experts. *Exxon Corp. v. W. Tex. Gathering Co.,* 868 S.W.2d 299, 304 (Tex.1993). The trial court is the gatekeeper of expert evidence, and we may not usurp that responsibility. *Reliance Ins. Co. v. Denton Cent. Appraisal Dist.,* 999 S.W.2d 626, 630 (Tex.App.—Fort Worth 1999, no pet.). We will not disturb the trial court's ruling absent an abuse of discretion. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996).

It is undisputed that Attebury designated Laur as an expert witness. However, Attebury contends that Laur was designated as an expert by 1994, long before the 1999 amendment to the rules of civil procedure took effect. On the other hand, Appellants contend that Laur was designated as an expert witness in 1999, after the rules took effect. The record also demonstrates that Appellants deposed Laur after he was designated as an expert.

The trial court conducted a full evidentiary hearing to determine the admissibili-

ty of Laur's testimony. During the hearing Appellants objected to Laur's proposed testimony regarding the $100 price differential between "large-units" and "small-units." At the conclusion of the hearing the trial court ruled that Laur was qualified to testify and overruled Appellant's objections to Laur's testimony. Because the trial court's ruling is supported by ample evidence, we do not find that the court acted arbitrarily or unreasonably by admitting Laur's testimony. *Garcia*, 988 S.W.2d at 222.

### Spoliation of Evidence

Finally, Appellants argue that the trial court abused its discretion by refusing to submit a spoliation of evidence question to the jury and that this probably caused the jury to reach an improper verdict. Specifically, Appellants contend that the court should have struck Laur's testimony because Attebury destroyed the tariff documents that would have shown whether or not there was a price differential.

In support of their contention, Appellants rely on Laur's testimony that the tariffs Attebury kept for the years after 1996 had been "destroyed." Laur testified that Attebury only kept the tariff documents for the last couple of years. The evidence also demonstrated: (1) that no "large-unit" published tariff document existed for the Wichita Falls area until 1996, and (2) that railroad tariffs are attainable from the railroad, trade groups, and on the internet.

Accordingly, the evidence demonstrates that the tariffs documents in question were not of a nature that were only available to Attebury, but were equally available to Appellants. Therefore, after reviewing all of the evidence, we cannot say that the trial court abused its discretion by refusing to charge the jury on spoliation of evidence. We overrule point four.

### MITIGATION OF DAMAGES

In their second point, Appellants argue that the trial court erred in awarding $345,000 for the differential charges accruing between November 30, 1984 and August 8, 1998. Specifically, Appellants assert that the evidence is legally and factually insufficient to support the jury's award of $345,000 and the jury's implied findings that they proximately caused Attebury's damages. Appellants also assert that the jury's implied finding that Attebury mitigated its damages was against the great weight and preponderance of the evidence. However, as we discussed under point one, the evidence was sufficient to support the jury's findings and its award of damages. Therefore, we will only review Appellants' contention that the evidence was insufficient to support the jury's implied finding that Attebury mitigated its damages.

Mitigation of damages is an affirmative defense that is designed to preclude the plaintiff's recovery if the plaintiff could have avoided damages by his or her own reasonable efforts and at slight expense. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995). In reviewing a point asserting that an answer is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to

be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 244 S.W.2d at 661.

## The Evidence

Here, the evidence demonstrates that Attebury would have been able to load "large-unit" cars, but would have incurred greater expenses in the amount of $100 to $175 per car for the extra switches that it would take it to load the cars without using its easement. The evidence also demonstrates that it would take approximately two switches to meet a "large-unit" requirement. We hold that this evidence was sufficient to support the jury's implied finding that Attebury mitigated its damages by not incurring extra charges that the multiple switches would have caused. We cannot say that the jury's implied finding is against the great weight and preponderance of the evidence. Therefore, the trial court did not err in entering judgment on the jury's award of damages. We overrule point two.

## PREJUDGMENT INTEREST

■ In their fifth point, Appellants argue that the trial court erred in awarding Attebury prejudgment interest in an amount that "constitutes seventy percent (70%) of the actual damages awarded." Specifically, Appellants contend that: the trial court should not have awarded the prejudgment interest because "it took the trial court 16 years to re-try the case" after this court remanded the case to the trial court, and Attebury should not recover prejudgment interest because it "did not diligently pursue [its] legal rights to use the easement."

■ Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of the judgment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex.1998); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex.1985). There are two legal sources for an award of prejudgment interest: (1) general principles of equity, and (2) an enabling statute. *Johnson & Higgins*, 962 S.W.2d at 528; *Cavnar*, 696 S.W.2d at 552. The Texas Supreme Court held that awarding prejudgment interest advances two ends: (1) achieving full compensation, and (2) expediting both settlements and trials by removing incentives for defendants to delay without creating such incentives for plaintiffs. *Cavnar*, 696 S.W.2d at 554. The trial court has broad discretion to decide whether prejudgment interest is warranted. *Perry Roofing Co. v. Olcott*, 722 S.W.2d 538, 545 n. 1 (Tex.App.—Fort Worth 1986), *aff'd*, 744 S.W.2d 929 (Tex. 1988). Furthermore, the trial court, in the exercise of its equitable powers, should render a judgment including prejudgment interest that would make the plaintiff whole. *Cavnar*, 696 S.W.2d at 555.

## The Evidence

■ Here, the record demonstrates that Attebury was deprived of the right to its easement from 1984 to 1998. General principles of equity entitle a plaintiff to prejudgment interest on a damages award that is caused by the loss of the use of an easement. *Corley v. Exxon Pipeline Co.*, 821 S.W.2d 435, 438 (Tex.App.—Houston [14th Dist.] 1991, writ denied). The Texas Supreme Court has held that the twin aims of discouraging delay and encouraging compromise are advanced by awarding the prevailing market rate interest. *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex.1988). The supreme court has also held that the trial court assessing prejudgment interest should weigh the circumstances, including the

length of time the plaintiff has been without use of the easement and the money it has lost as a result. *Johnson & Higgins,* 962 S.W.2d at 528–30.

This suit began in 1980 when Attebury f/k/a Wichita Falls Grain Company sued Appellants for access to and enjoyment of the easement it owned on Taylor's property. On appeal, we reversed the trial court's judgment and remanded for a new trial. *See Wichita Falls Grain Co.,* 649 S.W.2d at 801. Between 1984 and 1998, Appellants continued to deny Attebury access to its easement. Appellants only permitted Attebury to have access to its easement when the trial court granted Attebury a Temporary Injunction forcing Appellants to allow access. In addition, since the beginning of the litigation there have been other lawsuits relating to the easement filed by Taylor, counter-claims filed by Appellants, motions for injunctive relief filed by both parties, and a motion for continuance filed by Appellants. At the conclusion of the second trial, the jury found that Appellants had interfered with Attebury's rights to the easement from February 1984 to August 1998.[3] Accordingly, after considering the circumstances of the case, including the length of time Attebury was kept from the use and enjoyment of its easement, we hold that the trial court did not err in awarding prejudgment interest. We overrule point five.

### CONCLUSION

Having overruled each of Appellants' points on appeal, we affirm the trial court's judgment.

---

**3.** The trial court entered judgment for the amount awarded by the jury for the period beginning November 1984 because the amount awarded for the period of February 1984 to November 1984 was barred by the statute of limitations.