**W. W. HARRIS et al., Appellants,**

**v.**

**PHILLIPS PIPE LINE COMPANY,**
Appellee.

No. 12172.

Court of Civil Appeals of Texas,
Austin.

Dec. 4, 1974.

Rehearing Denied Jan. 8, 1975.

**362**

———◆———

John W. Harris, Austin, for appellants.

John W. Stayton, Stayton, Maloney, Hearne, Babb & Cowden, Austin, for appellee.

O'QUINN, Justice.

Appellants brought this suit for damages and to enjoin appellee pipe line company from replacing and relocating a ten inch line across land owned by appellants in Travis County.[1]

Trial was before the court without the aid of a jury and resulted in judgment that the pipe line company, in replacing its line at a different location from an existing line, acted within its grant of easement and acted in a reasonable and necessary manner to effect a safe and orderly replacement of the line.

Appellants bring the single point of error that the judgment "is contrary to Texas law concerning the proper construction

of easements and the narrow and limited terms of the assignment from Shell [Pipe Line Corporation] to Appellee Phillips [Pipe Line Company]; there was no evidence to support such findings."

Shell Pipe Line acquired the original easement in 1928 from a predecessor in title to the Harris group, and in 1929 constructed the ten inch pipe line which Phillips later acquired, the replacement of which by Phillips became the subject of this suit. The easement granted Shell, under which it constructed the line, conveys to Shell, its successors and assigns " . . . the right of way from time to time to lay, construct, *reconstruct, replace, renew, maintain, repair, change the size of and remove pipes and pipe lines* for the transportation of oil, petroleum or any of its products, gas, water and other substances, or any thereof . . ." (Emphasis added)

Phillips acquired the 1929 pipe line from Shell in 1953, together with easement rights. The assignment from Shell to Phillips grants " . . . the rights and easements evidenced by instruments described on exhibit 'A' hereto attached [which includes the 1928 grant to Shell over the Harris lands], insofar and only *insofar as they provide for the laying, maintaining, use, operation, repair, replacement and removal of a ten inch pipe line* located thereon *this day sold by Shell to Phillips,* Shell hereby retaining all rights and easements evidenced by such instruments not herein assigned, including all second line rights . . ." (Emphasis added)

The record shows that Shell maintains and operates a "second line" approximately seventy feet from and parallel to the ten inch line Phillips acquired from Shell in 1953.

Since obtaining the pipe line Phillips has used the line continuously to transport gas

---

[1]. Appellants are W. W. Harris, John W. Harris, Darrow D. Harris, and Robert B. Harris, who as plaintiffs filed suit June 4, 1973; appellee is Phillips Pipe Line Company, defendant below.

liquids, derived from about twenty gasoline plants which are connected to more than 200 gas wells in the region of Odessa, in Ector County, to the Phillips refinery at Sweeney, in Brazoria County, a distance of more than 430 miles. The gas liquids are transported in the line under high pressure, and a break in the line would permit the liquids to vaporize and become highly combustible.

The record shows that the possibility of this hazard was one of the reasons Phillips decided that the 1929 line, buried to an average depth of only twenty inches, should be replaced by a line buried to a depth of forty-eight inches. The replacement program was limited to about forty-seven miles of line in Travis County, near and within the City of Austin. When laid in 1929 the pipe line in Travis County was largely in open prairie country. Growth of the City of Austin since that time has brought part of the line within the limits of the City, and the pipe line, buried only twenty inches beneath the surface of the soil, became subject to disruption by activity of an urban, rather than a rural, occupancy. The undisputed testimony at the trial was that by burying the replacement line to a depth of four feet it would be less hazardous than the earlier line buried to a depth of slightly more than one and a half feet.

On the Harris tract the new pipe line was constructed parallel to and fifteen feet north of the old (1929) line, but the pipe size remains the same, ten inches. An engineer for Phillips, whose testimony was not rebutted, testified that in order to bury the new line to a depth of four feet the operation required a ditch one foot wider than a ditch necessary to lay a line to a depth of twenty inches. It was also shown that from five to ten feet more working space was required to bury the line in a trench four feet deep than was needed to bury a line at the shallow depth of twenty inches. The new line was laid no closer than fifteen feet to the existing line because construction would have been hazardous at any less distance from the old line, which was still in operation during construction of the new line.

When asked why the new line was not laid "practically in the same ditch" as the old line, the engineer testified, "As a matter of safety, working over the old line, and also there is a—we had to blast rock, and anything closer [than fifteen feet] would be too close."

Phillips did not shut down, or discontinue operation of, the old line while the new line was being laid, which required a period of three months. To discontinue use of the operating line during construction would have required Phillips to shut down its refinery at Sweeney, and the twenty gasoline plants, as well as the more than 200 gas wells supplying the plants, would have been required to stop production for the three months during which the new line was being laid. To avoid shutdowns, Phillips laid the new line a short distance from and parallel to the existing line, and, upon completion of the new line, Phillips "switched" from the old line to the new line, which was shown to be a common practice in the industry. Phillips operates only one line on the Harris land and has agreed to remove the 1929 line, which is no longer in operation, if requested by appellants.

The trial court filed conclusions of law and finding of fact, pursuant to the request of plaintiffs below, as set out:

"Conclusions of Law

1. The grant of the easement expressly includes the right of the grantee, Shell Pipe Line Corporation, to replace its pipe line, and it follows that the grantee may do that which is reasonably necessary to effect a replacement.

2. The partial assignment from Shell Pipe Line Corporation to Phillips Pipe Line Company assigned the rights of Shell Pipe Line Corporation to replace a ten inch (10″) pipe line, and it follows that Phillips Pipe Line Company may do that

which is reasonably necessary to effect the replacement."

Finding of Fact

1. What Defendant, Phillips Pipe Line Company, has done in replacing the pipe line at a different location from its existing pipe line was reasonable and necessary to effect a safe and orderly replacement of the line."

■ The easement rights Shell acquired from the landowner in 1928 patently are very broad. The grant does not limit Shell to the number of lines the grantee may lay, and, as to any such line, Shell acquired the right to "construct, reconstruct, replace, renew, maintain, repair, change the size of and remove pipes and pipe lines." Shell's grant to Phillips expressly gives Phillips the right to replace and remove the ten inch line Shell sold to Phillips. Out of its broad rights, Shell expressly granted Phillips easement rights "insofar as they provide for the laying, maintaining, use, operation, repair, replacement and removal of the ten inch pipe line."

■■ We are not concerned here with a grant from the landowner to Phillips, but instead with the question of what Shell and Phillips intended would be conveyed to Phillips. It is clear that, among other rights, Phillips acquired the right of "replacement and removal of the ten inch pipe line." The grant must be given the broadest construction of which it is reasonably susceptible by resolving any ambiguities against Shell as the grantor. The Supreme Court in 1964 stated the rule that: "It is a well-recognized rule of construction that any ambiguity in an instrument granting an easement is to be resolved against the grantor. See Gulf View Courts, Inc. v. Galveston County, Tex.Civ. App., 150 S.W.2d 872, wr. ref'd. But there is another equally well-settled rule of construction that where an instrument is open to two reasonable constructions, it will be strictly construed against its author."

Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662, 665 (Tex.Sup.1964).

The record does not disclose which of the pipe line companies caused the easement to be prepared in 1953. There is no evidence that the instrument was prepared by lawyers employed by Phillips.

■ In reaching its conclusions of law the trial court appears to have been guided by the settled rule that any grant of an easement necessarily carries with it the right to do such things as are reasonably necessary for the full enjoyment of the easement granted. The extent to which incidental rights may be exercised under the grant must depend upon the object and purpose of the grants and whether such incidental rights are limited under terms of the grant. Central Power and Light Company v. Holloway, 431 S.W.2d 436, 439 (Tex.Civ.App. Corpus Christi 1968, no writ) and cases cited. Also see Coleman v. Forister, Tex., 514 S.W.2d 899 (1974) reh. den. Nov. 20, 1974.

■ Phillips plainly had the right under its grant from Shell to substitute a new ten inch line for the old ten inch line. To accomplish this, Phillips acquired from Shell the incidental right to do such things as were reasonably necessary for full enjoyment of the easement. The record shows that Phillips owned the refinery at Sweeney at the time Phillips acquired the pipe line from Shell in 1953 and connected the line to the same sources of unrefined products at the line's beginning point that it now uses, the twenty gasoline plants, supplied by more than 200 gas wells, near Odessa, for the purpose of supplying its refinery. Shell and Phillips clearly intended that the easement and its continued use would serve to transport products from the gasoline plants in West Texas to the refinery at Sweeney, where 85,000 barrels of refined gases are produced daily. To require Phillips to cease use of the pipe line in order to replace it with a new line would deny Phillips a right expressly given

by the grant, the right to use, maintain, and operate the pipe line.

■ For additional reasons we hold that the trial court correctly held that the landowners should take nothing in their suit against Phillips. It appears that the Harris group, as the present landowners, were without justiciable interest in the question of whether Shell's grant to Phillips ·was sufficiently broad to permit replacement of the ten inch line by relocating it in a nearby trench and not in the same trench occupied by the original line laid in 1929.

The grant to Shell, as already noted, was very broad and did not limit the number of pipe lines Shell could install. The total width of the easement was not specified, nor was the location designated across the land now owned by the Harris group. Shell acquired the right also to grant to "successors and assigns." Easements under similar grants have been designated expansible easements presently vesting in the grantee an interest in the land. Strauch v. Coastal States Crude Gathering Company, 424 S.W.2d 677 (Tex.Civ.App. Corpus Christi 1968, writ dsmd.); Williams v. Humble Pipe Line Company, 417 S.W.2d 453 (Tex.Civ.App. Houston 1967, no writ). See also Lone Star Gas Company v. Childress, 187 S.W.2d 936, 940 (Tex. Civ.App. Waco 1945, no writ).

Under the original grant to Shell, that company could have relocated the ten inch pipe line, or could have replaced the line, at a different location on the Harris tract. The question of whether Shell's grant to Phillips did or did not permit Phillips to relocate or replace the ten inch line as shown under the facts is one in which the Harris group had no justiciable interest. West Texas Utilities Company v. Smith, 168 S.W.2d 665 (Tex.Civ.App. Austin 1943, writ ref.); Texas Agricultural Workers Union v. Isbell, 195 S.W.2d 206 (Tex.Civ. App. Austin 1946, writ ref. n. r. e.).

The judgment of the trial court is affirmed.

Affirmed.