

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00006-CV
_____

JOSEPH FERRARA, Appellant

V.

MICHAEL L. MOORE AND DEBORAH J. MOORE, Appellees

On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. CCL-09-C-404

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter
Concurring and Partial Dissenting Opinion by Justice Moseley

OPINION

Finding that Michael L. Moore and Deborah J. Moore owned an express easement for ingress and egress to their property, the trial court enjoined Joseph Ferrara from restricting use of the easement and granted attorney's fees. Ferrara's appeal complains that the evidence does not support the trial court's findings of fact, injunction, and attorney's fee award. We find no reversible error and affirm the judgment of the trial court.

## I.      Facts and Procedural Background

Brian Hays owned an eleven-acre tract of land abutting a county road, which he subdivided into five lots. Each deed contained an easement for a "non-exclusive right-of-way for purposes of ingress and egress between a public road and the tract conveyed." Each of the deeds referenced an attachment in which the particular easement was specifically described by metes and bounds. In 2005, Ferrara purchased tract #2 by warranty deed in which he also was granted such an easement and the tract was subject to all valid easements which allowed northern property owners, including owners of otherwise landlocked tract #5, access to their property from a county road. Ferrara installed a fence and a gate around the easement in February 2006 and began to block the road. He justified this action by claiming he "researched it and that piece of property north of me did not have legal access to use that [easement]. It was a privilege."

Hays was notified by Roy Gay, another owner of property north of tract #2, that he was "allowed to enter the gate for a couple of times and then Mr. Ferrara would not let them enter any

2

longer." To no avail, Hays spoke with Ferrara "several times about the easement" and clarified that Ferrara was not allowed to block it. Thereafter, "Ferrara came out and . . . cut trees [and laid them] all across the easement where it wasn't passable," despite being directed to open the gate. Finally, to avoid conflict, Hays used a bulldozer to create a road on someone else's property to allow the other tracts to access the county road.

In May 2009, the Moores purchased tract #5 and discovered that Ferrara was blocking access and use of their easement. The Moores asked Ferrara "once again could we settle this amicably . . . and [Ferrara] said no, that [he'd] have to be taken to court." So, the Moores filed suit. In their petition, they asked the court to order Ferrara to remove the gates to the easement, issue an injunction enjoining him from "erecting any other impediment to the free and unrestricted use of the easement," and sought damages and attorney's fees. Ferrara's pro se answer alleged that the "[f]ence and gate" had been in place for three and one-half years and the easement had not been used for that time and was therefore abandoned.

After a bench trial, which Ferrara attended pro se and called no witnesses other than himself, the trial court issued judgment declaring that the Moores had an express easement for means of ingress and egress onto their property. It permanently enjoined Ferrara from "erecting or placing gates, fences, posts, barriers, wires, chains, locks, logs, rocks, or any other impediment or obstacle" that would "interfer[e] in any manner with [the Moores'] free and unrestricted use and enjoyment of the Easement." The existing gates were to be removed, and Ferrara was ordered to

3

pay damages and $4,500.00 in attorney's fees. After judgment was entered, Ferrara retained counsel, who promptly requested findings of fact and conclusions of law from the court. A motion for new trial apprised the court of Ferrara's complaints that insufficient evidence supported: (1) the court's permanent injunction; (2) the finding that Ferrara erected or placed impediments or obstacles on the easement; (3) the conclusion that the Moores were entitled to free and unrestricted use and enjoyment of the easement; and (4) the damage award. In addition, the motion complained that the trial court was without authority to order removal of the gates and that insufficient evidence supported the allegedly excessive award of $4,500.00 in attorney's fees. The trial court denied the motion and issued findings of fact and conclusions of law.

On appeal, Ferrara argues that the trial court erred: (1) as a matter of law "in extending the terms of the nonexclusive easement beyond the written terms of the easement"; (2) in granting the Moores free and uninterrupted access over the easement; (3) in granting a permanent injunction forbidding Ferrara from placing gates on the easement to prevent unauthorized access and vandalism;[1] (4) in entering judgment based on findings of fact and conclusions of law which are challenged for sufficiency of the evidence; (5) in awarding nonsegregated attorney's fees; and (6) in limiting Ferrara's cross-examination.

II.     The Trial Court Had Authority to Order Ferrara to Remove Obstructions From the Easement

---

[1]Ferrara testified about an alleged instance of vandalism to the gate. There was no testimony that the gate was built in response to vandalism or unauthorized access.

An easement is a nonpossessory interest that authorizes its holder to use the property for a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). Ferrara argues that the court misinterpreted the easement terms and erred in ordering him to remove gates and other obstacles on the easement. Interpretation of contracts granting easements are reviewed de novo. *Barrow v. Pickett*, No. 01-06-00664-CV, 2007 WL 3293712 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op.).

A servient estate cannot interfere with the right of the dominant estate to use an easement for the purpose for which it was granted or sought. *McDaniel v. Calvert*, 875 S.W.2d 482, 485 (Tex. App.—Fort Worth 1994, no writ) (citing *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex. 1966)). Likewise, the easement owner must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Any use by others that interferes with the exercise of superior easement rights must yield. *Taylor Foundry Co. v. Wichita Falls Grain Co.*, 51 S.W.3d 766, 770 (Tex. App.—Fort Worth 2001, no pet.); *McDaniel*, 875 S.W.2d 485 (citing *Pittman v. City of Amarillo*, 598 S.W.2d 941, 944 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.)). The Moores' easement originated from an express grant with a specific description. Their rights are paramount to the extent of the grant. *Williams v. Thompson*, 152 Tex. 270, 256 S.W.2d 399, 403 (1953).

The basic principles of contract construction and interpretation are applied when considering an express easement's terms. *Marcus Cable*, 90 S.W.3d at 700. The contracting parties' intentions, as expressed in the grant, determine the scope of the easement. *Id.* at 701 (quoting RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1 (2000) (providing that an easement "should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created"). The question of whether an access easement must remain "free from gates and bars depends upon the terms of the grant, its purpose, the nature and situation of the property, and the manner in which it is used" unless the easement's language provides direction otherwise. *Gerstner v. Wilhelm*, 584 S.W.2d 955, 958 (Tex. App.—Austin 1979, writ dism'd) (trial court did not abuse its discretion in requiring servient estate to remove gates from easement providing access to otherwise landlocked property) (citing *Arden v. Boone*, 221 S.W. 265 (Tex. Comm'n App. 1920, judgm't approved)); *see Calvert*, 875 S.W.2d at 485.

We first look to the grant and its purpose. In this case, all five tracts were borne from a single acquisition of 111 acres. Because all tracts north of tract #2 did not have access to a public roadway, they were granted "a non-exclusive right-of-way for purposes of ingress and egress between a public road and the tract conveyed and described herein." Additionally, the easement provided that the grantor and his assigns "shall have the non-exclusive right to use *any portion* of

6

this easement that lies within the tract conveyed herein." (Emphasis added.) Because the gates and fences were built on specifically described easement property, grantees were improperly barred from using these portions of the easement. Ferrara's actions in building a barbed wire fence on one end of the easement, a gate on another end of the easement which remained locked, in felling logs across the easement to make it impassable, and in denying access to grantees of the easement for a period of three years, could certainly be considered as contrary to the purpose of the easement as expressed within the grant. At trial, Ferrara appeared to believe the Moores had no right to an easement and only "IP [International Paper Company] had legal access on deed for that easement." Ferrara did not attempt to show that the Moores' use of the easement would impair or interfere with his use of the property.

We will also consider the nature and situation of the property as it sheds light on the intention of the parties as expressed in the deed. When the easement was granted, no gates, fences, or other obstacles were placed across the roadway. It was openly used for ingress and egress from 1985 until Ferrara's obstacles were built in 2006. There is nothing in the record to suggest that there are uses for the easement property other than to provide access to landlocked property owners. Where, as here, an easement is granted to provide abutting landowners access to a roadway, and no gates existed prior to the grant of the easement, "it is evident access to the roadway was to be unobstructed." *Calvert*, 875 S.W.2d at 485 (finding made in absence of deed

7

language specifying dominant estate had free and unrestricted access);[2] *Hilburn v. Providian Holdings, Inc.*, No. 01-06-00961-CV, 2008 WL 4836840, at **1, 4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (mem. op.) (holding servient estate had no right to close or lock gate which existed prior to creation of nonexclusive access easement because it interfered with purpose of easement); *Burns v. McDaniel*, 158 S.W.2d 826, 827 (Tex. Civ. App.—Eastland 1942, no writ).[3]

Michael Moore testified that he cannot travel down the easement to his property without running over Ferrara's gate, jumping over stumps, and finally breaking through a six-foot barbed wire fence wired to a post. We find that the trial court did not err as a matter of law in its interpretation of the deed and the parties' intent. Contrary to the motion for new trial alleging the court was "without legal authority" to do so, the trial court could enjoin Ferrara from "erecting or

---

[2]We do not agree with Ferrara's contention that the term "nonexclusive" means that the Moores cannot have free and unrestricted access to the easement. *See Calvert*, 875 S.W.2d at 485.

[3]Ferrara points to the memorandum opinion of *Barrow* in support of his position. *Barrow*, 2007 WL 3293712. Barrow's land was subject to a nonexclusive roadway easement providing Pickett a second means of entry onto his undeveloped land. *Id.* at *1. The easement was for "ingress, egress, and access on, over, and across the Easement Tract." *Id.* In order to utilize his property as a hay field and pasture for horses and cattle, Barrow erected a gate across an access easement allowing Pickett access to his property. *Id.* at **1–2. Our sister court held that the trial court erred in enjoining Barrow from placing gates along the access road. *Id.* at *2. Because the gate was not secured to prohibit Pickett's access, the court found the interference was not unreasonable. *Id.* at **2, 4. Pickett had only to stop, open and shut the gate. Next, our sister court looked to the language of the grant, which only allowed for access to the dominant estate and nothing more. *Id.* at *3. In this case, in addition to language similar to the language in *Barrow*, the easement provided that the grantor and his assigns were to "have the non-exclusive right to use any portion of this easement." Further, gates had been erected on the easement in the past. *Id.* at *4 n.3. As to the use of the property, the court discussed the fact that Barrow would be unable to properly utilize his land for horse and cattle operations unless he could maintain the gate. *Id.* at *4. Interestingly, while our sister court attempts to shy away from the analysis applied in *Arden*, its reasoning and accompanying footnotes indicate that it conducted the *Arden* analysis. *Id.*; *see generally Arden*, 221 S.W. 265.

placing gates, fences, posts, barriers, wires, chains, locks, logs, or any other impediments or obstacles . . . on the Easement."[4]   Ferrara's first two points of error are overruled.[5]

## III.   Challenge to the Court's Findings of Fact and Conclusions of Law

### A.   *Standard of Review*

Findings of fact entered in a case tried to the bench "are of the same force and dignity as a jury's answers to jury questions."   *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)).   We review the findings of fact by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question.   *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."   *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).   We will credit evidence favorable to the Moores if a reasonable judge acting as

[4]The dissenting opinion to this portion of the opinion would rule that the trial court erred in enjoining the erection of gates at the easement because it would unreasonably burden the use of the servient estate.   Because there is no evidence in this record of any likely burden on the servient estate, any conclusion that there is such a burden would require speculation.   There is also no evidence that gates would be the only way to allow use of the servient estate for cattle without fully fencing the easement.   Cattle guards might be an option, but that, too, is speculation.

[5]Ferrara also cites *Stout v. Christian*, 593 S.W.2d 146 (Tex. Civ. App.—Austin 1980, no writ), as authorizing the placement of gates by the servient estate owner.   A major difference with the facts of this case is that there the easement authorized gates of "livestock proof construction."   The owner of the servient estate erected gates and provided keys to the dominant estate holder.   The opinion found that the trial court did not abuse discretion by allowing the gates in that instance and distinguished their earlier case of *Carleton v. Dierks*, 195 S.W.2d 834 (Tex. Civ. App.—Austin 1946, no writ), in which the same appellate court had found the facts in *Carleton* authorized a finding that erecting such locked gates interfered with the dominant estate holder's lawful use of the easement.

a fact-finder could, and will disregard contrary evidence unless a reasonable judge could not when making this determination. *Id*.; *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied). As long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for the judgment of the trial judge. *Ramsay*, 254 S.W.3d at 625 (citing *Wilson*, 168 S.W.3d at 822). In this case, the court is the sole judge of the credibility of the witnesses and weight given to their testimony. *Id*. (citing *Wilson*, 168 S.W.3d at 819). Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* (citing *Wilson*, 168 S.W.3d at 822).

When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the trial court's judgment. *Id.* (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). We will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id*. (citing *Ellis*, 971 S.W.2d at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). Because we are not a fact-finder, we will not pass on the witnesses' credibility or substitute our judgment for the judge's, even if the evidence would clearly support a different result. *Id*. (citing *Ellis*, 971 S.W.2d at 407).

## B.       *Assessment of the Findings of Fact*

Ferrara first challenges the finding that he locked the gate and failed to provide others with a key or means of access to the property. He cites to his own testimony that the lock belonged to IP, who owned adjoining property. The trial court heard testimony from Hays, Michael Moore, and neighbor Ray Littlejohn that Ferrara was the person denying access to the property. Hays also contacted Mary Kay Jones at IP who said Ferrara allowed her to put a lock on the gate, but that the lock was not on the gate when she next visited the property. At the time of trial, there was still a lock on the gate to which the Moores did not have a key. The trial court, as trier of fact and sole judge of Ferrara's credibility, could have determined either that the lock currently on the gate belonged to Ferrara, or that Ferrara had the key to the lock placed by IP and had failed to provide a copy to the Moores, thereby blocking their access to the easement.

The next challenged finding is that Ferrara "felled large pine trees and pine logs across the access road, as shown in Plaintiff's Exhibit 10, making it impossible to travel across the easement." Hays testified that Ferrara cut trees on his property and left them strewn across the easement. Moore stated, "The easement still has all this fallen lumber on it." A picture included as evidence demonstrates that the easement could not be traversed by car after the act. Ferrara confirmed the trial court's finding during his following cross-examination of Hays:

Q.     [By Ferrara] . . . Was those trees on my property?

A.     They were on -- probably were, probably on the easement. They were on the easement property. Now whether they were property line trees between the [neighbor] and your easement road, I really can't say one way or the other . . . .

11

Q. Well, it would be discourteous to clear my property fence line and throw it on someone else's property. Would you agree to that?

A. I would agree to that.

Q. Okay. So it would be proper to clear my fence line with my debris and put it on my property instead of someone else's property. Would you agree to that?

Ferrara's questioning insinuated that he cut down the trees and placed them across the easement, and was attempting to seek Hays' approval that it was the right thing to do, as opposed to placing his trees on his neighbor's property. We find the trial court's finding was supported by legally and factually sufficient evidence.

Another challenged finding is that Ferrara "erected a barbed wire fence (not a gate) across the northern end of the access road as shown in Exhibit 9. This fence also made the easement impassable, even if a key had been provided to the gate on the south end." Exhibit 9 depicts five wooden posts placed across the easement connected with barbed wire. Hays testified this "gate" could not be opened, and Moore stated "it's a six foot tall barbed wire fence wired to the post. So that is a barrier" and clarified the wire was "stapled to the fence post." Ferrara did not contradict these statements.

Taking the above findings into consideration, the judge entered the following complained-of findings: "Ferrara by his actions completely closed off access to the easement by adjoining landowners," and "[f]ollowing its construction, Defendant Ferrara locked the gate and

12

kept it locked at all times." As explained above, the trial court's finding that Ferrara restricted access to adjoining neighbors by locking the gate was based on sufficient evidence. Because Ferrara built the gate in 2006, and argued that no one else had accessed the easement since that time when claiming the easement had been abandoned, the trial court was free to find that the gate was locked "at all times."

Next, the trial record contains a letter written to Ferrara asking him to remove barriers to the easement. Ferrara challenges the court's finding that he refused to remove the obstructions following receipt of the May 2009 letter. The trial court's findings were supported by testimony from Hays and Michael Moore that the easement was still being blocked by gates, fences, and felled trees.

Ferrara also challenges the finding that the Moores expended $4,500.00 in attorney's fees, and that the fees were reasonable and necessary. The Moores' counsel testified he charged "a fair and reasonable rate" of $300.00 per hour and spent twenty hours on the case, yielding a $6,000.00 fee. It appears that the trial court reduced the attorney's fees to $4,500.00 after discounting for time spent in "pursuit of tortuous [sic] damages." We find that the trial court's fee award was supported by legally and factually sufficient evidence.

The finding that it would cost $800.00 to clear the easement of felled trees and other obstructions is also challenged. This finding was based on Hays' testimony that he would have to

13

perform work with a bulldozer at the rate of $100.00 per hour for eight hours in order to clear the easement. This finding remains uncontroverted.[6]

While there is no error contained in the above findings because they are supported by legally and factually sufficient evidence, a few of the court's findings are technically incorrect. First, the court found that the Moores met with Ferrara on numerous occasions, orally requested that he remove obstructions from the road and allow them access to their properties, and that Ferrara refused on each occasion. Michael Moore testified he pleaded with Ferrara twice to allow him access to the easement. Ferrara's contention on appeal is that "[t]wo times is twice, not 'numerous times.'" Although the evidence shows Hays talked to Ferrara "five or six times" to tell him he could not deny access, the finding that Michael Moore talked to Ferrara on numerous occasions is not supported by the evidence.

Also, Ferrara challenged the finding that the Moores sent a demand letter to Ferrara threatening suit unless the obstructions were removed. Exhibit 13 in the trial court's record contains a letter from Jeff W. Mays written on May 22, 2009, that was sent to Ferrara. The letter informs Ferrara of the nature of the easement and obstructions, and threatens suit unless access to the easement is allowed. However, the letter clarifies that Hays, rather than the Moores, hired the attorney that sent the demand letter. Thus, the trial court's finding is in error.

---

[6]Without citation to any supporting authority, the brief merely argues that the Moores have not yet expended the money to clear the property, and thus have not been damaged. It is apparent that the road will have to be cleared of the trees and three years' worth of debris that has accumulated on the easement.

Ferrara failed to brief the issue of harm. It is axiomatic that we may not reverse the trial court's judgment based on these two technically incorrect findings of fact unless we can determine the errors "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a). Because we find these errors had no effect upon the judgment, as the conclusions of law and resulting judgment could be made in the absence of such findings, Ferrara suffered no harm. Thus, we will not reverse the trial court's judgment based on these points of error.

## IV. The Issue of Attorney Fee Segregation Was Not Preserved

Ferrara complains in his appellate brief that Moore's counsel "did not segregate the time that he spent on unspecified tort claims, time spent on injunction issues or time spent on unpled declaratory damage issues." We find that he has failed to preserve this point of error.

Judicial economy requires that a trial court have the opportunity to correct an error before an appeal proceeds. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). "As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1. A motion for new trial or exception to the judgment provides the trial court with an opportunity to hear and rule on the movant's claims. *Robertson v. Gregg County*, No. 06-09-00062-CV, 2009 WL 2971763, at *1 (Tex. App.—Texarkana Sept. 18, 2009, no pet.) (mem. op.) (citing *Gerdes v. Kennamer*, 155 S.W.3d 523, 532 (Tex. App.—Corpus Christi 2004, pet. denied)). We must first address whether an objection below was necessary because the pleadings in this case did not

15

necessarily invoke the Declaratory Judgments Act (Act) upon which the Moores rely to sustain the judgment awarding fees.

Attorney's fees are recoverable in an action only if they are explicitly allowed by a statute, or if they are provided for in a contract between the parties. *New Amsterdam Cas. Co. v. Tex. Indus., Inc*., 414 S.W.2d 914, 915 (Tex. 1967); *Canales v. Zapatero*, 773 S.W.2d 659, 660 (Tex. App.—San Antonio 1989, writ denied). The Act provides "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the [deed] . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 2008). A claimant successful under this Act is entitled to "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). Citation to or denomination of the suit as one brought under the Act is not a prerequisite to entitlement to attorney's fees under the Act. *Canales*, 773 S.W.2d 659; *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541 (Tex. Crim. App. 1998). From the briefs, it appears that Ferrara concedes that the Moores' claims fell within the Act and that they are entitled to some attorney's fees. The question is how much?

In *Canales*, our sister court ruled that it was not necessary to object to the issue of segregation to the trial court in order to preserve the issue on appeal where the pleadings did not

16

clearly refer to the Act and counsel was not aware that entitlement under the Act was being sought.[7]   773 S.W.2d at 662.

In our case, the following exchange occurred at trial:

> THE COURT:   All right.   Mr. Davis, you have made a request for attorney's fees.   Can you quote me to a statutory or common law basis for the award of attorney's fees in a case of this nature?

> MR. DAVIS:   Yes, sir.   Judge, I believe that would fall under the Declaratory Judgment [sic] Act, Civil Practice and Remedies Code 37.009.   A case that is pretty well on point would be *Canalas vs. Zapatero*, 773 S.W.2d 659.

No objection to attorney's fees was made during trial by Ferrara.

A motion for new trial was filed after the award was issued.   In the motion, Ferrara complained that the attorney's fees were not reasonable or necessary, but made no complaint that the pleadings contained causes of action that did not support attorney's fees, raising notice for a need to segregate attorney's fees.   Ferrara had an opportunity to complain of failure to segregate attorney's fees, but did not take advantage of such opportunity.   We find he failed to preserve this error for our review.

Ferrara's objection by the motion for new trial that the attorney's fees awarded were not reasonable or necessary is not the same as that urged on appeal and therefore presents nothing for review.   *Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.—Houston [14th Dist.] 1995, writ denied); *Haryanto v. Saeed*, 860 S.W.2d 913, 921 (Tex. App.—Houston [14th Dist.] 1993, writ

---

[7]In fact, counsel in *Canales* objected at trial that no relief under the Act was made.   The court found these objections sufficient to preserve error.   773 S.W.2d at 662 n.2.

17

denied) (en banc). Complaints and arguments on appeal must correspond with the complaint made at the trial court level. *Century 21 Real Estate Corp. v. Hometown Real Estate Co*., 890 S.W.2d 118, 124 (Tex. App.—Texarkana 1994, writ denied). Ferrara's point of error on appeal does not comport with the complaint presented to the trial court in the motion for new trial, supporting our conclusion that it was not preserved.

Finally, even if the issue was properly preserved, it appears the trial judge attempted to segregate the attorney's fee for the declaratory judgment by requesting further information from counsel. Based on counsel's statements that he spent fifteen hours preparing for the declaratory judgment, including the injunction, whereas the other five hours were spent on the damage claim, the trial court awarded a fee of $4,500.00, calculated at fifteen hours at an hourly rate of $300.00. We overrule this point of error.

## V.      Issue of Limiting Ferrara's Re-Cross Examination

During the second re-cross examination of Michael Moore, the following exchange occurred:

> Q.      (By Ferrara) You went to your property sometime before and after that to look at your property, correct?
>
> MR. DAVIS:   Objection.
>
> THE COURT:   I'll sustain the objection.
>
> MR. FERRARA:   Okay.

THE COURT: The scope of redirect means the only thing he asked him was about this instrument. So actually the only thing you can cross examine is about this instrument. You've already had an opportunity to cross examine so this is called recross examination.

Q. [by Mr. Ferrara] That instrument states a well-maintained road, and are you saying that that road that you went on to look at your land was well maintained?

MR. DAVIS: Objection. Exceeds the scope.

THE COURT: Sustained.

For the first time on appeal, Ferrara argues that the trial court improperly limited Ferrara's cross-examination because Rule 611(b) of the Texas Rules of Evidence states that a witness may be cross-examined on any relevant matter. TEX. R. EVID. 611(b). The record shows that Moore had been fully cross-examined by Ferrara for what appears to be seventeen pages of about 100 pages of actual testimony; Ferrara had passed the witness, and this further interrogation was re-cross-examination. The trial court had previously noted that Ferrara's interrogation was needlessly consuming time, taking from thirty seconds to a minute between each question he asked. It is the responsibility of the trial court to exercise reasonable control over the mode and order of interrogation of witnesses and to avoid needless consumption of time. TEX. R. EVID. 611(a). The conduct and extent of cross-examination is entrusted to the sound discretion of the trial court, and its ruling will not be disturbed unless it is arbitrarily and unreasonably made. *Mendoza v. Varon*, 563 S.W.2d 646, 650 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e). Further, this argument was not presented to the trial court in Ferrara's motion for new trial, or otherwise;

19

Ferrara has failed to preserve this issue for our review. TEX. R. APP. P. 33.1. We overrule his last point of error.

## VI. Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice



CONCURRING AND PARTIAL DISSENTING OPINION

I concur in part and dissent in part with the majority opinion. My dissent is restricted to the finding that Ferrara does not possess the right to erect a gate or gates across the easement itself.[8]

Both the dominant tract owned by the Moores and the subservient tract owned by Joseph Ferrara were originally parts of a called 111.29-acre tract which belonged to Brian Hayes and wife, Donna Hayes, and James Watson and wife, Rebecca Watson ("Hayes, et al."). Hayes, et al. made four conveyances on August 1, 1984, out of the 111.29-acre tract to the Texas Veterans Land

---

[8]When looking at the final judgment granted by the trial court, it is necessary for the purpose of this dissent to presume certain things. The judgment states that it finds that an easement exists over and across the real estate described on Exhibit "A" as an easement appurtenant to the realty described in Exhibit "B." Neither such exhibit was attached to the judgment. It is assumed that Exhibit "A" was supposed to be a description of the portion of a roadway which traveled across the tract of land belonging to Ferrara and that Exhibit "B" was supposed to contain a description of the land acquired by the Moores.

Board.   Among these conveyances was the tract which eventually came to be owned by Ferrara.[9]

The portion of the tract which remained after those four conveyances is the one sold twenty-five

years later to the Moores.

Each of these conveyances followed the same format.   Each makes reference to an

"Exhibit A" for the description of the property to be conveyed.   These deeds each also recite,

> [T]here is also conveyed to Grantee, its successors and assigns, a non-exclusive right-of-way for purposes of ingress and egress between a public road and the tract conveyed and described herein. This access easement is more particularly described in Exhibit "B" which is attached hereto and made a part hereof for all purposes.

Within each of those exhibit Bs, after the description of the easement being conveyed, they

continue by stating—seemingly almost as an afterthought—that the tract being conveyed is

"subject to the following described easement" followed by a metes and bounds description of the

portion of the conveyed tract which is subject to an easement.   No purpose for the easement is

recited and no further description of the rights granted or retained is contained in the documents.[10]

An easement is an interest in real estate that authorizes the holder of the dominant estate to

use property for a particular purpose.   *Koelsch v. Indus. Gas Supply Corp*., 132 S.W.3d 494, 497

---

[9]The fifth and final tract remained owned by Hayes, et al. until it was sold by them to the Moores in 2009.   During the intervening period, Hayes, et al. sold rocks and gravel from the remaining tract.

[10]In challenging the right of the Moores to cross his land, Ferrara puts himself in much the same position of the man who cuts off the limb upon which he is standing.   In order for Ferrara to gain access to a public road, Ferrara must rely on easements across two other tracts of land created by deeds almost identical to the one upon which the Moores rely in attempting to establish their right of way over Ferrara's lands.   Had Ferrara been successful in combating the Moores' attempt to enforce the easement, he would have been hard pressed to insist that the easement granting him access over his neighbors' property was effective to grant him access to his own tract.   "What is sauce for the goose is sauce for the gander."   *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 451 (Tex. 1998).

(Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Marcus Cable*, 90 S.W.3d at 700). The meanings of easements are interpreted in the same fashion and under the same basic principles that are applied to the construction of a contract. *Marcus Cable*, 90 S.W.3d at 700; *DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *Koelsch*, 132 S.W.3d at 497. "When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Accordingly, the intent of the parties, as expressed in the grant, determines the scope of the interest conveyed. *Marcus Cable*, 90 S.W.3d at 700–01; *Koelsch*, 132 S.W.3d at 497–98. To interpret the parties' intentions adequately and to discern the scope of the rights conveyed to the easement holder, one must focus on the terms of the granting language. *See Marcus Cable*, 90 S.W.3d at 701 (citing *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 664–65 (Tex. 1964)). An easement "should be interpreted to give effect to the intention of the parties ascertaining from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created." *Id.* We rely solely on the written terms of the easement unless the language is ambiguous. *Koelsch*, 132 S.W.3d at 498. When the terms of the grant of an easement are not defined, we are

22

to apply their "plain, ordinary, and generally accepted meaning." *Marcus Cable*, 90 S.W.3d at 701. The rules regarding construction of deeds generally apply in the construction of easements. *Tex. Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 149 n.3 (Tex. App.—Austin 1998, no pet.).

Any grant of an easement necessarily carries with it the right to do such things as are reasonably necessary for the full enjoyment of the easement granted. *Harris v. Phillips Pipe Line Co.*, 517 S.W.2d 361 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.). We must take into account that

> [e]very easement carries with it the right of doing whatever is reasonably necessary for the full enjoyment of the easement itself. Extent of such incidental rights depends upon the purpose and extent of the grant itself. Such right is limited and must be exercised *in such a reasonable manner as not injuriously to increase the burden upon the owner of the fee*. Nothing passes by implication as incidental to a grant except what is reasonably necessary to its fair enjoyment. What is reasonably necessary for the full enjoyment of the easement will be determined by a construction of the language of the express grant, considered in the light of the surrounding circumstances.

*Bland Lake Fishing & Hunting Club v. Fisher*, 311 S.W.2d 710, 715–16 (Tex. Civ. App.—Beaumont 1958, no writ) (emphasis added).

How could the prohibition against gates being installed at the entrance and exit of the roadway across Ferrara's land increase the burden on the subservient estate? The tract imposed with the easement (i.e., the subservient estate) here is not a small residential building lot but is, rather, rural acreage. One would expect that one of the uses to which people could be commonly

23

expected to place such acreage tracts is the pasturage of livestock. Should Ferrara (or some subsequent owner of the tract) desire to raise livestock but is prohibited from erecting gates where the easement enters and exits his property, he may well be required to either fence off the entire easement property from the balance of the tract (which would effectively deny the owner of the subservient estate from the reasonable use of the portion of the tract subject to the easement) or go to the expense of installing and maintaining cattle guards on the roadway easement. Given the paucity of direction in the wording of the easement itself, such a requirement would unreasonably burden the owner of the subservient estate.[11] Granted, there is no evidence that such pasturage use is now intended or that a future owner has such use in mind, but that lack of evidence is irrelevant; this example is employed solely to demonstrate that the prohibition against gates does increase the burden on the subservient estate. If the lack of evidence of that potential intended use is important, it would likewise be important that there is no evidence of the existence or nonexistence of gates on the roadway *at the time the easement was created*. Such evidence of either situation is not relevant to a determination of the rights granted under the easement. What is important is what the easement says.

The Moores rely on (and the majority cites) *Gerstner v. Wilhelm*, 584 S.W.2d 955, 957 (Tex. Civ. App.—Austin 1979, writ dism'd), for the proposition that the trial court had the

---

[11]In this day of the automobile, when one need not leave their car to purchase food to eat or obtain money from our banks (and by some news accounts, even to be married), we tend to think that it is necessary for us to do everything from our automobiles. I maintain, however, that it is not unreasonable to exit from an automobile and open a gate. Doing everything from the confines of our cars falls among the luxuries of our society.

24

authority to enjoin Ferrara from putting gates across the easement as it enters and exits his property. However, in contrast to the easement the Moores claim here, the easement in *Gerstner* called for "the free and uninterrupted use, liberty and easement of passing in and along a certain passageway or road across the said premises . . . and being 40 feet in width and to use such passageway or road at all times in common with the Grantee. . . ." *Id.* This case is distinguishable from *Gerstner* in two respects: (1) in this case, there was no such expansive or delineated grant of rights in the easement as in *Gerstner*, and (2) unlike this case, *Gerstner* dealt with an ambiguous grant of easement. In *Gerstner*, the trial judge provided an instruction to the jury (not quoted in the opinion) as to the meaning of "free and uninterrupted." The opinion in *Gerstner* does recite that, "Because of the language of the easement *and the factual circumstances surrounding the grant*, the court properly entered judgment that Gerstner remove the fences and gates." *Id.* at 959 (emphasis added). Since the issue of the easement was submitted to the jury in the *Gerstner* case to make factual determinations, it must have been deemed to have been an ambiguous grant because juries have no role in ruling on issues of law. In the circumstance in which there is an ambiguity, any such ambiguity is to be resolved against the grantor. *Dwyer*, 374 S.W.2d at 665. Further, where an instrument is capable of two reasonable constructions, it will be strictly construed against the author. *Harris*, 517 S.W.2d at 364. Here, the Moores stand in the shoes of Hayes, et al., the drafter of the easement.

25

One should point out that in the case at bar here, neither side alleges that any ambiguity exists in the grant of the easement. Under contract law (which, as pointed out above, applies as to easements), if ambiguity of the instrument is not pled, then its construction is solely a question of law and not of fact; questions of law are reviewed de novo. *Eastman Software, Inc. v. Tex. Commerce Bank, Nat'l Ass'n*, 28 S.W.3d 79, 84 (Tex. App.—Texarkana 2000, pet. denied).

Because the grant is in general terms, the grantees' dominant estate is entitled only to rights sufficient to effect the purpose of the easement. *See Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). As to implication of easement rights not specifically granted by the instrument creating the easement, a court can "imply only those rights reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the servient owner." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 871 (Tex. App.—Austin 1988, writ denied) (citing *Coleman*, 514 S.W.2d at 903). "Nothing passes by implication as incidental to a grant of an easement except what is reasonably necessary to its fair enjoyment." *Kearney & Son v. Fancher*, 401 S.W.2d 897, 903 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.).

The Moores brought this suit and it was their burden to provide evidence to support each portion of their claim. Although they fully established their right to an easement, they failed to provide evidence that fully-accessible gates could not be erected across it. To imply that the easement which the Moores own dictates that there be a prohibition against gates (to which the Moores would have full access) erected across it is to violate the constraint against imposing a

greater burden than is reasonably necessary to effect the ingress and egress purposes of the easement.

The easement here does not specifically grant the dominant estate the right to an easement "free and uninterrupted" by gates. The grant provides only for ingress and egress to the dominant estate. To find a grant of unrestricted passage, therefore, it would be necessary to read terms into the four corners of the document which do not exist (i.e., the right to drive a car the length of the easement without having to get out and open a gate); this cannot be done under the circumstances of this case. *See id.*; *Marcus Cable Assocs.*, 90 S.W.3d at 700; *Koelsch*, 132 S.W.3d at 498.

Accordingly, I believe the trial court erred in enjoining Ferrara from erecting gates on the easement so long as the owner of the Moores' tract were given access rights through those gates.

Bailey C. Moseley
Justice

Date Submitted:     July 6, 2010
Date Decided:       July 28, 2010

27