ACCEPTED
09-17-00107-CV
NINTH COURT OF APPEALS
BEAUMONT, TEXAS
12/13/2017 2:20 PM
CAROL ANNE HARLEY
CLERK

## No. 09-17-00107-CV

FILED IN
9th COURT OF APPEALS
BEAUMONT, TEXAS
12/13/2017 2:20:51 PM
CAROL ANNE HARLEY
~~Clerk~~

IN THE NINTH COURT OF APPEALS
BEAUMONT, TEXAS

**KEVIN GEHEB,**

*Plaintiff/Appellant,*

**v.**

**TRANSCANADA KEYSTONE PIPELINE, LP,**

*Defendant/Appellee.*

*On appeal from the 58th Judicial District Court*
*Jefferson County, Texas, Hon. Kent Walston, Judge Presiding*

**BRIEF OF APPELLEE TRANSCANADA KEYSTONE PIPELINE, LP**

**GERMER, P.L.L.C.**
Karen Bennett
State Bar No. 21702640
P.O. Box 4915
Beaumont, Texas 77704
(409) 654-6700 – telephone
(409) 835-2115 – fax
krbennett@germer.com

**ZABEL FREEMAN**
Thomas A. Zabel
State Bar No. 22235500
James A. Freeman
State Bar No. 00796580
Nancy H. Elliott
State Bar No. 08701240
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9117 – telephone
(713) 802-9114 – fax
tzabel@zflawfirm.com
jfreeman@zflawfirm.com
nelliott@zflawfirm.com

**ATTORNEYS FOR APPELLEE**
**TRANSCANADA KEYSTONE PIPELINE, LP**

***ORAL ARGUMENT REQUESTED***

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Kevin Geheb | Plaintiff/Appellant |
| Robert Keith Wade<br>LAW OFFICES OF ROBERT KEITH WADE<br>650 North Ninth Street at McFaddin<br>Beaumont, Texas 77702 | Counsel for Plaintiff/Appellant<br>Kevin Geheb |
| TransCanada Keystone Pipeline, LP | Defendant/Appellee |
| Thomas A. Zabel<br>James A. Freeman<br>Nancy H. Elliott<br>ZABEL FREEMAN<br>1135 Heights Blvd.<br>Houston, Texas 77008 | Counsel for Defendant/Appellee<br>TransCanada Keystone Pipeline, LP |
| Karen Bennett<br>GERMER, P.L.L.C.<br>P.O. Box 4915<br>Beaumont, Texas 77704 | Counsel for Defendant/Appellee<br>TransCanada Keystone Pipeline, LP |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

INDEX OF AUTHORITIES................................................................................ iv

REFERENCES ................................................................................................... vi

STATEMENT OF THE CASE.......................................................................... vii

ISSUES PRESENTED .................................................................................... viii

    1.     Did the trial court properly grant summary judgment in favor of
           TransCanada on all of Geheb's claims on the grounds that
           Geheb settled, released, waived, and forever discharged all such
           claims?....................................................................................... viii

    2.     Did the trial court properly grant summary judgment in favor of
           TransCanada on all of Geheb's claims on the grounds that there
           was no evidence of a "taking?" ............................................... viii

STATEMENT OF FACTS .................................................................................. 1

    1.     *The Pipeline*.................................................................................. 1

    2.     *The Landowner grants TransCanada an Easement on the
           Property* ...................................................................................... 2

    3.     *TransCanada and the Landowner agree that TransCanada will
           not be responsible for payment to any tenant, and the
           Landowner will pay any compensation due the tenant*....................... 2

    4.     *Geheb demands advance payment from TransCanada for 2012
           crop damage* ............................................................................... 3

    5.     *Geheb demands advance payment from TransCanada for 2013
           crop damage*................................................................................ 4

    6.     *Geheb files suit against TransCanada* ................................................ 5

7. *Geheb seeks irrelevant discovery related to TransCanada's status as a common carrier* ..................................................... 6

8. *The case is transferred to district court* ................................................ 8

9. *The trial court grants summary judgment in favor of TransCanada on Geheb's claims* ........................................... 9

STANDARD OF REVIEW ....................................................................... 10

SUMMARY OF THE ARGUMENT ......................................................... 10

ARGUMENT ............................................................................................ 13

I. Geheb Settled, Released, Waived, and Forever Discharged All of His Claims Against TransCanada ................................................. 13

    A. A Release of a Claim Extinguishes that Claim ................................. 13

    B. Geheb's Claims Fall Squarely within the Express Language of the 2013 Release ................................................................................ 14

        1. Geheb ignores the 2013 Release ............................................. 14

        2. The 2013 Release bars Geheb's claims ................................... 15

II. TransCanada Did Not Exercise the Power of Eminent Domain to Obtain the Easement on the Property that Geheb Leased for Rice Farming ................................................................................................ 18

    A. The Landowner Granted the Easement to TransCanada—There Has Been No "Taking" ................................................................... 20

CONCLUSION AND PRAYER ............................................................... 22

CERTIFICATE OF COMPLIANCE ....................................................... 24

CERTIFICATE OF SERVICE ................................................................. 24

# INDEX OF AUTHORITIES

**CASES**          **PAGE**

*Becon Constr. Co. v. Alonso,*
    444 S.W.3d 824 (Tex. App.—Beaumont 2014, pet. denied) ...................... 10

*Chambers v. Pruitt,*
    241 S.W.3d 679 (Tex. App.—Dallas 2007, no pet.) .................................. n.3

*Doggett v. Nitschke,*
    498 S.W.2d 339 (Tex. 1973) ........................................................................ n.3

*Dresser Indus., Inc. v. Page Petroleum, Inc.,*
    853 S.W.2d 505 (Tex. 1993) ...................................................................... 14

*D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.,*
    416 S.W.3d 217 (Tex. App.—Fort Worth 2013, no pet.)............................ 16

*Franks v. Brookshire Bros., Inc.,*
    986 S.W.2d 375 (Tex. App.—Beaumont 1999, no pet.) ............................ 13

*Harris v. Phillips Pipe Line Co.,*
    517 S.W.2d 361 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.)..........20-21

*Hart v. Traders & Gen. Ins. Co.,*
    189 S.W.2d 493 (Tex. 1945) ...................................................................... 13

*Henry v. Masson,*
    333 S.W.3d 825 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .......... 13, 14

*Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
    20 S.W.3d 692 (Tex. 2000) ....................................................................15-16

*Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.,*
    49 S.W.3d 347 (Tex. 2001) ........................................................................ 10

*M.D. Anderson Hosp. & Tumor Inst. v. Willrich,*
    28 S.W.3d 22 (Tex. 2000) .......................................................................... 10

*Memorial Med. Center v. Keszler,*
    943 S.W.2d 433 (Tex. 1997) ........................................................ 16

*Mobil Pipe Line Co. v. Smith*,
    860 S.W.2d 157 (Tex. App.—El Paso 1993, writ dism'd w.o.j.)............ 20-21

*Naik v. Naik*,
    438 S.W.3d 166 (Tex. App.—Dallas 2014, no pet.) .................................. 13

*Phillips Pipe Line Co. v. Razo*,
    420 S.W.3d 691 (Tex. 1967) ....................................................... 20

*Provident Life & Accident Ins. Co. v. Knott*,
    128 S.W.3d 211 (Tex. 2003) ........................................................ 10

*Reytec Constr. Resources, Inc. v. Baptist Hosps. of Se. Tex.,*
    No. 09-15-00085-CV, 2016 WL 6900874
    (Tex. App.—Beaumont Nov. 23, 2016, no pet.) ......................................... 13

*Roskey v. Texas Health Facilities Comm'n*,
    639 S.W.2d 302 (Tex. 1982) ........................................................ 10

*Schlumberger Tech Corp. v. Swanson,*
    959 S.W.2d 171 (Tex. 1997) .................................................... n.4

## STATUTES AND RULES

TEX. GOV'T CODE § 25.0003(c)(1) ........................................................ 8

TEX. R. CIV. P. 166a(c) ........................................................ 10

# REFERENCES

| | |
|---|---|
| "**Geheb**" | Defendant/Appellant Kevin Geheb is referred to as "Geheb." |
| "**TransCanada**" | Plaintiff/Appellee TransCanada Keystone Pipeline, LP is referred to as "TransCanada." |
| "**CR [page]**" | References to the Clerk's Record are cited as "CR [page]." |
| "**[volume]RR [page]**" | References to the Reporter's Record are cited as "[volume]RR [page]." |
| "**Geheb's Br. at [page]**" | References to the Brief of Defendant/Appellant Kevin Geheb are cited as "Geheb's Br. at [page]." |

## STATEMENT OF THE CASE

| | |
|---|---|
| ***Nature of the case***: | Geheb initiated this case in January 2015, seeking damages resulting from TransCanada's alleged interference with Geheb's rights in a rice farming leasehold, including alleged damages to Geheb's "leasehold and crop." CR 149-72. |
| ***Trial court***: | Honorable Kent Walston, 58th Judicial District Court, Jefferson County, Texas. |
| ***Trial court's disposition***: | In December 2016, TransCanada moved for summary judgment on all of Geheb's claims, on the grounds that Geheb "settled, released, waived and forever discharged" all of his claims against TransCanada, and additionally, that Geheb had no evidence to support his claims, including his claim for "taking." CR 438-90. On February 8, 2017, the trial court granted summary judgment in favor of TransCanada, ordered that Geheb "take nothing" by virtue of his claims against TransCanada, and entered a final summary judgment. CR 1021. |

# ISSUES PRESENTED

1.      In 2013, in exchange for consideration of $81,000.00, Geheb executed an Advance Release of Damage Claims in which he acknowledged "receipt of payment in full and in advance" for all crop and other foreseeable damages "attributable to or arising from [TransCanada's] proper exercise of its rights" under an Easement TransCanada purchased from the Landowner. In the release, Geheb "waive[d] and agree[d] to save, defend, hold harmless and indemnify [TransCanada]" from all claims, causes of action, and damages "which arise out of, are connected with, or relate in any way to . . . [TransCanada's] proper exercise of its rights granted under the Easement," including all crop and other foreseeable damages. CR 473.

> Did the trial court properly grant summary judgment in favor of
>
> TransCanada on all of Geheb's claims for damages to his leasehold
>
> and crop on the grounds that Geheb settled, released, waived, and
>
> forever discharged all such claims?

2.      TransCanada obtained the Easement by purchase from the Landowner, and did not exercise the power of eminent domain to obtain the Easement.

> Did the trial court properly grant summary judgment in favor of
>
> TransCanada on all of Geheb's claims on the grounds that there was
>
> no evidence of a "taking?"

## STATEMENT OF FACTS

### 1. *The Pipeline.*

TransCanada owns and operates the U.S. portion of the Keystone Pipeline System, which is comprised of approximately 2,151 miles of crude petroleum pipelines originating in Hardisty, Alberta and traversing to U.S. Midwest markets at Wood River and Patoka, Illinois and from Steele City, Nebraska, to Cushing Oklahoma ("the Pipeline"). CR 56. The Pipeline delivers crude petroleum to market hubs, where the oil is then shipped to refineries. CR 56-57. The Gulf Coast Project is an addition to the Keystone Pipeline System that commences at the crude petroleum supply hub at Cushing, Oklahoma, and terminates at existing crude storage terminal facilities near Nederland and Houston, Texas. CR 57. The Gulf Coast Project helps meet the increasing demand to transport domestic crude supply in the Permian, Williston, Granite Wash, Niobrara, and Mississippi Lime oil and gas producing basins. It decreases the demand for light domestic crude from U.S. Midwest refineries due to conversion projects that rely extensively on heavy crude supplies and pipeline capacity limitations between Cushing, Oklahoma and the U.S. Gulf Coast. *Id.*

1

**2.    *The Landowner grants TransCanada an Easement on the Property.***

Geheb is a former rice farmer tenant on a tract of land ("the Property") owned by Michael Gaus ("the Landowner") in Jefferson County, Texas.[1]  CR 173. On November 18, 2010, in consideration for the payment of $403,920.00, the Landowner granted TransCanada a 50-foot pipeline easement, specifically:

> a nonexclusive right-of-way and easement, fifty-feet (50') in width, and temporary workspace for the purpose of laying, constructing, maintaining, operating, replacing, protecting and removing only one (1) thirty-six-inch (36") in diameter . . . pipeline [] for the transportation of crude oil, natural gas, hydrocarbons, petroleum products and all by-products thereof over, through and across Grantor's lands, situated in Jefferson County, Texas . . . together with the rights of ingress and egress to that easement[.]

CR 438, 459-67.  Of significance to this appeal is the fact that TransCanada *did not* obtain the Easement by condemnation—it obtained it by purchase from the Landowner.

**3.    *TransCanada and the Landowner agree that TransCanada will not be responsible for payment to any tenant, and the Landowner will pay any compensation due the tenant.***

At the same time that the Landowner granted TransCanada the Easement, the Landowner and TransCanada entered into a Letter Agreement in which they agreed that (1) the $403,920.00 payment to the Landowner "constitutes payment in full, covering all damages, loss of crops and laser leveling within the [Easement]," (2) TransCanada will not be responsible for payment to any tenant

---

[1] In 2013, the Landowner terminated the lease with Geheb for nonpayment and leased the Property to another individual.  CR 696-97; 1RR 13-14.

2

on the Property, "and any compensation due the tenant by way of the easement and initial construction will be paid by [the Landowner]," and (3) TransCanada will pay for any damages outside of the [Easement] that are in addition to the damages contemplated in (1). CR 439, 468.

### 4. Geheb demands advance payment from TransCanada for 2012 crop damage.

Prior to the start of construction on the Property, and before he would allow TransCanada on the Property, Geheb demanded payment from TransCanada for damages he claimed would result to his 2012 rice crop. CR 439, 469. Geheb calculated these damages to be $51,840.00. CR 439, 469. Despite the Landowner's agreement that "any compensation due the tenant by way of the easement and initial construction will be paid by [the Landowner]," TransCanada nevertheless paid Geheb the $51,840.00 ("the 2012 Payment") he demanded as advance compensation for crop damage in order to ensure TransCanada's ability to immediately access the Property. In return for TransCanada's payment, Geheb executed an Advance Release of Damage Claims ("the 2012 Release"). CR 439, 470-71. The 2012 Release provided, in pertinent part, that:

> In consideration of said advance payment, I/we and my/our heirs, executors, administrators and assigns, do hereby release and forever discharge [TransCanada] from any and all causes of action, suits, debts, claims, expenses, general damages, interest, costs and demands whatsoever, at law and in equity, against [TransCanada], which I/we ever had, have now, or which I/we or my/our Insurers, heirs, executors, administrators, successors or assigns hereafter can, shall or

3

may have in the future, relating to the damage items listed on Appendix A, arising out of or in connection with, resulting or alleged to have resulted from, construction or surveying, over, under or on [the Property].

CR 470.[2] The 2012 Release provided that the 2012 Payment by TransCanada constituted "full payment and settlement, in advance, for all damages listed on the Advance Damages Computation Form" attached to the 2012 Release. *Id.*

## 5. *Geheb demands advance payment from TransCanada for 2013 crop damage.*

In March 2013, Geheb again demanded payment from TransCanada for damages he allegedly would incur in connection with construction of the Pipeline. CR 440, 472. This time, Geheb claimed that as a result of construction delays, he would be unable to produce his 2013 rice crop, resulting in damages that he calculated to be $115,375.51. CR 440, 472. Once again, despite the Landowner's agreement that "any compensation due the tenant by way of the easement and initial construction will be paid by [the Landowner], and after negotiating with Geheb as to the extent and amount of his claimed damages, TransCanada paid Geheb $81,000.00 ("the 2013 Payment"). In exchange, Geheb signed another Advance Release of Damage Claims ("the 2013 Release"). CR 440, 473. In the 2013 Release, Geheb expressly acknowledged:

> ***receipt of payment in full and in advance*** for all tree, crop, plant, timber, harvest or yield loss damages, diminution in value of the

---

[2] Appendix A to the 2012 Release described the damages as "Damages Rice, 50 Acres, Total Loss 324,000 lbs. @ .16 per lb." for a total of $51,840.00. CR 206.

4

Property (if any), and/or any other reasonably foreseeable damages attributable to or arising from [TransCanada's] proper exercise of its rights granted pursuant to that certain Permanent Easement and Right-of-Way Agreement and Construction Access Road Agreement . . . including, without limitation, those items listed on Appendix A attached hereto.

CR 473 (emphasis added). The 2013 Release further provided that:

[Geheb] on behalf of [himself/themselves], and any other person or entity claiming by or through [him/they] hereby *waive(s) and agree(s) to save, defend, hold harmless and indemnify [TransCanada] . . . from and against any and all claims, causes of action, suits, debts, expenses, general damages, interest, costs and demands whatsoever, at law and in equity, against [TransCanada]* . . . which arise out of, are connected with, or relate in any way to [TransCanada's] acquisition of, or Owner's conveyance of, the Easement or [TransCanada's] proper exercise of its rights granted under the Easement, *including, but not limited to, any and all tree, crop, plant, timber, harvest or yield loss damages, diminution of the value of the Property, or any other reasonably foreseeable damages*[.]

*Id.* (emphasis added).

**6.      *Geheb files suit against TransCanada.***

On January 9, 2015, Geheb filed his Original Petition against TransCanada in the County Court at Law No. 1 of Jefferson County, Texas. CR 6-22. Then Geheb filed his First Amended Original Petition, asserting a hodgepodge of no less than nine claims against TransCanada for (i) taking, (ii) breach of agreement, (iii) tortious interference, (iv) negligence, (v) fraud, duress, and/or taking of undue advantage, (vi) common law fraud, (vii) fraudulent misrepresentation, (viii) fraud – negligent misrepresentation, (ix) fraud – suppression of facts, (x) exemplary

5

damages, and (xi) attorneys' fees. He sought a "judgment declaring [Geheb's] rights" in the farming leasehold, and damages stemming from TransCanada's alleged interference with Geheb's "express and implied, legal and equitable, rights to the farming leasehold." CR 149-172. At bottom, Geheb sought additional compensation for alleged damages directly related to TransCanada's proper exercise of its rights under the Easement—damages that Geheb had settled, released, and forever discharged.

**7.** **Geheb seeks irrelevant discovery related to TransCanada's status as a common carrier.**

Included with Geheb's Original Petition was Plaintiff's First Request for Production, consisting of 40 categories of documents. CR 21, 23-26. None of the requested documents were related to any damages Geheb might have actually incurred, communications between the parties, or the 2012 and 2013 Payments and Releases. *See* CR 23-26. Instead, *all* of the requests related to TransCanada's status as a common carrier pipeline (*e.g.,* contracts related to the Pipeline, the Pipeline's operations, and filings with state and federal regulatory authorities). He requested these despite the fact that *TransCanada never filed an eminent domain proceeding against either Geheb or the Landowner*—TransCanada obtained the Easement by purchase from the Landowner. *See* CR 173, 176.

When TransCanada refused to produce the requested documents, which were irrelevant to any issue in this case, Geheb filed a Motion to Compel. CR

6

300-53. Geheb argued that TransCanada damaged his leasehold and crop, and that TransCanada "attempted to justify its action by alleging it would perform a 'public purpose' in transporting" crude petroleum in the Pipeline. CR 300. Geheb argued that because TransCanada had claimed common carrier status in unrelated condemnation proceedings, it "must establish its right to condemn and strict compliance with the law authorizing private property to be taken for public use." CR 301-02. Because TransCanada had not condemned, and did not seek to condemn the Property against him or the Landowner, Geheb's arguments were nonsensical. *See* CR 177; 379; 382, 383-84.

Nevertheless, Geheb persisted in aggressively seeking discovery related to TransCanada's status as common carrier with the right and power of eminent domain. Geheb noticed the deposition of Louis Fenyvesi—a Director of Business Development for TransCanada who lives and works in Canada, and who has no personal knowledge of any information related to any of Geheb's claims for damages. With the notice, Geheb included a subpoena duces tecum that mirrored his First Request for Production of Documents. CR 178, 210-15, 227-28. In response to TransCanada's Motion to Quash Mr. Fenyvesi's deposition, CR 229-41, Geheb argued that the deposition was necessary to "test TransCanada's bold allegations" of "'public purpose' and 'common carrier' status'" in unrelated cases by the "'crucible of cross examination.'" CR 40. Geheb's arguments continued

7

to make no sense for the plain reason that TransCanada had not condemned, and did not seek to condemn, the Property.

## 8. *The case is transferred to district court.*

In his Petition in the County Court at Law No. 1, Geheb sought damages stemming from TransCanada's alleged interference with his "express and implied, legal and equitable, rights to the farming leasehold," and sought a "judgment declaring [his] rights" in the farming leasehold. CR 14, 22. A leasehold is an interest in real property. The County Court at Law No. 1 lacks jurisdiction over disputes regarding the existence of a leasehold and questions of title to real property.[3] TransCanada, therefore, filed a Plea to the Jurisdiction, and included in the motion as an additional basis that damages Geheb sought exceeded the jurisdictional limit of the County Court at Law No. 1. *See* CR 248-54, 267-70 TEX. GOV'T CODE § 25.0003(c)(1).

Geheb did not dispute that his claims involved questions regarding the existence of a leasehold and title to real property, or that he sought damages in excess of the County Court at Law No. 1's jurisdiction. *See* CR 295-99. Instead, Geheb argued that "TransCanada has repeatedly judicially admitted that [the County Court at Law No. 1] has jurisdiction, under § 21.001 of the Texas Property

---

[3] *See, e.g., Doggett v. Nitschke,* 498 S.W.2d 339, 339 (Tex. 1973) ("A county court does not have jurisdiction to try questions of title to land."); *Chambers v. Pruitt,* 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property.").

8

Code, of matters involving TransCanada's action as a purported common carrier . . . with, among other things, the right and power to 'enter on and condemn the land, rights-of-way, easements and property . . . necessary for the construction, maintenance, or operation of the common carrier pipeline,'" once again citing unrelated condemnation proceedings. CR 296-97; *see also* CR 357. Again, Geheb's argument made no sense, as TransCanada was not claiming that it was a common carrier with the right of eminent domain and had not instituted condemnation proceedings in connection with the Easement.

On January 13, 2016, the County Court at Law No. 1 transferred this case to the 60th Judicial District Court of Jefferson County, Texas "as required by § 21.002 of the Texas Property Code," finding that "this case involves issues and matters that cannot be fully adjudicated in this Court." CR 366.

**9.** ***The trial court grants summary judgment in favor of TransCanada on Geheb's claims.***

In December 2016, TransCanada moved for summary judgment on all of Geheb's claims against it ("Summary Judgment Motion"). CR 438-90. On February 8, 2017, the trial court granted summary judgment in favor of TransCanada, ordered that Geheb "take nothing" by virtue of his claims against TransCanada, and entered a final summary judgment. CR 1021. Geheb subsequently filed a Motion for Leave to File Amended Petition to Add Responsible Third Party, a Motion to Reconsider, and a Request for Findings of

9

Fact and Conclusions of Law, all of which the trial court denied. CR 987-89, 1018-20, 1113, 1114, 1121-22, 1130. This appeal followed.

## STANDARD OF REVIEW

A trial court's grant of summary judgment is reviewed de novo. *Becon Constr. Co. v. Alonso*, 444 S.W.3d 824, 828 (Tex. App.—Beaumont 2014, pet. denied) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). To prevail on a traditional motion for summary judgment, the movant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. TEX. R. CIV. P. 166a(c); *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 250-51 (Tex. 2001). The burden is on the movant to show that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982). If the movant establishes its entitlement to summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

## SUMMARY OF THE ARGUMENT

TransCanada purchased a pipeline easement from the Landowner. In 2012 and again in 2013, Geheb, a rice farmer tenant on the Property, demanded advance

10

payment from TransCanada for alleged crop damages and other damages before he would allow TransCanada on the Property. Although TransCanada had a written agreement with the Landowner that TransCanada would not be responsible for payment to any tenant on the Property, and that "any compensation due the tenant by way of the easement and initial construction will be paid by [the Landowner]," TransCanada nevertheless paid Geheb in order to ensure TransCanada's ability to immediately access the Property.

In exchange for the considerable consideration TransCanada paid to Geheb in 2013, Geheb executed an Advance Release of Damage Claims. In it, he acknowledged "receipt of payment in full and in advance" for all crop damages and other reasonably foreseeable damages attributable to TransCanada's exercise of its rights under the Easement. Geheb also expressly waived and agreed to hold TransCanada harmless from all claims, causes of actions, damages, and demands whatsoever arising out of TransCanada's exercise of its rights under the Easement, including all crop damages and other reasonably foreseeable damages.

In this lawsuit, Geheb seeks *additional* compensation for alleged damages directly related to TransCanada's proper exercise of its rights under the Easement. These are reasonably foreseeable damages that Geheb settled, released, and forever discharged. Geheb has never disputed that his claims fall squarely within the claims he released in the 2013 Release, nor has he ever challenged the validity

11

or enforceability of the 2013 Release. Moreover, Geheb's claim for 2014 crop damages is patently frivolous, as it is undisputed that the Landowner terminated Geheb's leasehold in 2013 for nonpayment. The trial court, therefore, properly granted summary judgment in favor of TransCanada on the grounds that Geheb settled and released all of his claims.

Geheb devotes nearly the entirety of his brief to arguing, as he did in the trial court, that TransCanada failed to establish it is a common carrier with the right and power of eminent domain. Based on this, Geheb claims he should be allowed irrelevant discovery and the denial of TransCanada's summary judgment motion. This argument is nonsensical—TransCanada did not obtain the Easement by condemnation.

The record conclusively establishes that TransCanada obtained the Easement by consensual purchase from the Landowner, and not through condemnation. Accordingly, it is irrelevant whether TransCanada is a common carrier with the power of eminent domain. The trial court properly rejected Geheb's requests for irrelevant discovery and his argument that the trial court was required to make a preliminary finding as to TransCanada's common carrier status under the Texas Natural Resources Code.

## ARGUMENT

I.   **GEHEB SETTLED, RELEASED, WAIVED, AND FOREVER DISCHARGED ALL OF HIS CLAIMS AGAINST TRANSCANADA.**

### A.    A Release of a Claim Extinguishes that Claim.

"'A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered.'" *Reytec Constr. Resources, Inc. v. Baptist Hosps. of Se. Tex.,* No. 09-15-00085-CV, 2016 WL 6900874, *8 (Tex. App.—Beaumont Nov. 23, 2016, no pet.) (citation omitted). *See also Henry v. Masson*, 333 S.W.3d 825, 844 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("A release is a writing which provides that a duty or obligation owed to one party to the release is discharged immediately or upon the occurrence of a condition."). "Generally, a release is a bar to any right of action growing out of the matter discharged, conclusively estopping the releasor from making further efforts to enforce the claim released." *Franks v. Brookshire Bros., Inc.,* 986 S.W.2d 375, 377 (Tex. App.—Beaumont 1999, no pet.) (citing *Hart v. Traders & Gen. Ins. Co.,* 189 S.W.2d 493, 494 (Tex. 1945)); *see also Naik v. Naik*, 438 S.W.3d 166, 174 (Tex. App.—Dallas 2014, no pet.) ("A release is a contractual arrangement that operates as a complete bar to any later action based upon matters covered in the release.").[4] Accordingly, "[a] release of a claim or cause of action

---

[4] "Texas law favors and encourages voluntary settlements and orderly dispute resolution." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex. 1997).

13

extinguishes the claim or cause of action." *Henry*, 333 S.W.3d at 844 (citing

*Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)).

### B. Geheb's Claims Fall Squarely within the Express Language of the 2013 Release.

#### 1. Geheb ignores the 2013 Release.

The first argument in TransCanada's Summary Judgment Motion was that "[Geheb] Settled, Released, Waived and Forever Discharged All Claims Against Keystone." CR 443-47. In his brief, however, Geheb intentionally glosses over the 2013 Release and its express provisions that bar his claims. In fact, Geheb only mentions the 2012 and 2013 Releases in his Brief in three places. The first is in a footnote in his Statement of the Case, in which he states:

> While the pipeline construction was ongoing, TransCanada did make a payment for some, but not all, of Geheb's 2012 rice crop losses, which Geheb compromised and accepted, and TransCanada later made a payment for some, but not all, of Geheb's 2013 rice crop losses, which Geheb compromised and accepted. TransCanada prepared and had Geheb sign release when each of the 2012 and 2013 rice crop loss payments were made. Geheb, in his action, sought no further compensation for 2012 or 2013 crop losses.

Geheb's Br. at n.3.

The next mention is in his Statement of Facts timeline, in which he states that "TransCanada pays Geheb for a portion of Geheb's 2012 rice crop already planted by Geheb," and "TransCanada pays Geheb for a portion of Geheb's 2013 rice crop which Geheb could not plant due to pipeline construction." *Id.* at 5.

14

Finally, in his Argument and Authorities section, Geheb quotes language from the 2013 Release regarding "*reasonably <u>foreseeable</u> damages attributable to or arising from [TransCanada's] <u>proper</u> use of its rights granted pursuant to that certain Permanent Easement*[.]"  He then argues that the Letter Agreement between the Landowner and TransCanada conflicted with TransCanada's obligation to "correct level and restore to original ground level," and, "therefore, it could not have been a proper use of the rights granted by the recorded easement[.]"  He neither offers any authority for that proposition, nor explains why this purported conflict made TransCanada's use of the Easement improper.  He also argues that the damages of not so leveling could not have been foreseeable by him, but fails to offer any authority for this proposition.  *Id.* at 11.  In total, Geheb's "legal argument" is unsupported by authority or competent evidence.

### 2. The 2013 Release bars Geheb's claims.

To effectively release a claim, the releasing instrument must "mention" the claim to be released.  *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 697-98 (Tex. 2000) (releasing "all demands, claims or causes of action of any kind whatsoever, statutory, at common law or otherwise, now existing or that might arise hereafter, directly or indirectly attributable to the rendition [of] professional legal services" during a certain time period).  It is not necessary, however, for the parties to "anticipate and identify

15

each potential cause of action relating to the release's subject matter." *Id.* at 698 (citing *Memorial Med. Center v. Keszler,* 943 S.W.2d 433, 435 (Tex. 1997)). Rather, "a valid release may encompass unknown claims and damages that develop in the future." *Id.*; *see also D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.) ("Although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future.").

The reason Geheb glosses over the 2013 Release is because it is fatal to his claims. In the 2013 Release, Geheb expressly acknowledged:

> ***receipt of payment in full and in advance*** for ***all*** tree, crop, plant, timber, harvest or yield loss damages, diminution in value of the Property (if any), ***and/or any other reasonably foreseeable damages attributable to or arising from [TransCanada's] proper exercise of its rights granted pursuant to that certain Permanent Easement and Right-of-Way Agreement*** and Construction Access Road Agreement . . . including, without limitation, those items listed on Appendix A attached hereto.

CR 473 (emphasis added). The 2013 Release further provided that Geheb:

> on behalf of [himself/themselves], and any other person or entity claiming by or through [him/they] hereby ***waive(s) and agree(s) to save, defend, hold harmless and indemnify [TransCanada] . . . from and against any and all claims, causes of action, suits, debts, expenses, general damages, interest, costs and demands whatsoever, at law and in equity, against [TransCanada] . . . which arise out of, are connected with, or relate in any way to [TransCanada's] acquisition of, or Owner's conveyance of, the Easement or [TransCanada's] proper exercise of its rights granted under the Easement***, including, but not limited to, any and all tree, crop, plant,

16

> timber, harvest or yield loss damages, diminution of the value of the Property, *or any other reasonably foreseeable damages*[.]

*Id.* (emphasis added). The 2013 Release clearly and unambiguously included both existing claims and potential future claims related to TransCanada's construction activities on the Easement granted to it by the Landowner. Significantly, Geheb never challenged the validity or enforceability of the 2013 Release.

All of Geheb's claims arise out of TransCanada's alleged damage to his crops and failure to restore the leasehold to its condition in connection with TransCanada's exercise of its rights under the Easement. Thus, they fall squarely within the express language of the 2013 Release. Geheb specifically asserted in his Petition that he was the rice farmer tenant on the Property "until 2013, when [TransCanada] caused damages to [Geheb's] leasehold and crop[.]" CR 151. The plain and unambiguous language of the 2013 Release releases TransCanada from "any and all claims, causes of action, suits, debts, expenses, general damages, interest, cost and demands whatsoever" that arise out of or relate to TransCanada's "proper exercise of its rights granted under the Easement," including all crop damages, diminution in value of the Property, or "any other reasonably foreseeable damages." CR 473. Geheb's claims fall squarely within the language of the 2013 Release. In fact, Geheb has never asserted that his claims do not fall within the language of the 2013 Release.

Moreover, in his brief, Geheb admits that he compromised and settled his claims for 2012 and 2013 crop losses. Geheb's Br. at n.3 ("Geheb, in his action, sought no further compensation for 2012 or 2013 crop losses."). According to Geheb, he initiated this lawsuit "to recover his damages for TransCanada's failure to correct level and restore to original ground level so that water may pass and flow undisturbed and unimpeded across Geheb's rice farm leasehold (*i.e.,* laser-level) upon completion of TransCanada's pipeline construction **and for 2014 rice crop losses** resulting from TransCanada's failure to restore Geheb's leasehold to such leveled condition necessary for rice farming." *Id.* at 1 (emphaseiadded) (footnote omitted). It is undisputed, however, that *the Landowner terminated Geheb's lease in 2013* for nonpayment, and *Geheb did not lease the Property in 2014*. CR 696-97.

The 2013 Release bars all of Geheb's claims as a matter of law. Geheb did not even attempt to raise a fact issue as to the validity or enforceability of the 2013 Release. Accordingly, the trial court properly granted TransCanada's Summary Judgment Motion and entered a take-nothing judgment on all of Geheb's claims.

## II. TRANSCANADA DID NOT EXERCISE THE POWER OF EMINENT DOMAIN TO OBTAIN THE EASEMENT ON THE PROPERTY THAT GEHEB LEASED FOR RICE FARMING.

Rather than address the bases on which the trial court granted TransCanada's Summary Judgment Motion, Geheb devotes nearly the entirety of

his Brief to addressing irrelevant issues related to TransCanada's status as a common carrier with the right and power of eminent domain under the Texas Natural Resources Code—a power that TransCanada ***did not*** exercise to obtain the Easement. *See* Geheb's Br. at pp. 11-21. Specifically, Geheb argues that:

-- TransCanada failed to establish its common carrier *bona fides* (*Id.* at pp. 11-17);

-- Tar sands are not considered to be crude petroleum under the Texas Natural Resources Code (*Id* at p.17);

-- TransCanada is required to pay Geheb just compensation for its interference with Geheb's enjoyment of the Property in the exercise of its eminent domain rights as a common carrier (*Id.* at p.18);

-- The trial court failed to make a preliminary inquiry as to TransCanada's common carrier status (*Id.* at pp. 19-20); and

-- The trial court failed to afford Geheb an opportunity to conduct discovery as to TransCanada's common carrier status (*Id.*at pp. 20-21).

As TransCanada repeatedly urged in the trial court, none of these issues has any relevance in this case for the simple and obvious reason that ***no taking ever occurred.*** As Geheb acknowledges, TransCanada never exercised the right of eminent domain to condemn the Easement on the Property—it obtained it by purchase from the landowner. *See* Geheb's Br. at 19 ("TransCanada failed to ever institute proceedings to condemn[.]").

19

## A. The Landowner Granted the Easement to TransCanada—There Has Been No "Taking."

"An owner of land has title and is entitled to possession of the premises." *Mobil Pipe Line Co. v. Smith*, 860 S.W.2d 157, 159 (Tex. App.—El Paso 1993, writ dism'd w.o.j.). "As the owner, that party may grant rights to other parties to use either the surface or subsurface." *Id.* "If a lease is given to farm the land, the right to possession is divested from the owner during the term of the lease." *Id.* Even when the owner leases the surface, however, "the owner retains a right to enter into agreements that will affect the surface."

In Geheb's cited authority, *Mobil Pipe Line*, the landowner executed a right-of-way agreement in which she conveyed an easement to Mobil to "lay, repair, maintain, operate and remove one 14" pipe line" across a tract of land on which her nephew farmed under a lease at will. *Id.* at 158. The nephew did not join in the easement, and denied Mobil access across the property. *Id.* Mobil sought an injunction to obtain access over its right-of-way, which the trial court denied. *Id.* Reversing the trial court's denial of Mobil's request for injunctive relief, the court of appeals recognized that "the owner of the right-of-way has the dominate estate." *Id.* at 159 (citing *Phillips Pipe Line Co. v. Razo,* 420 S.W.2d 691, 695 (Tex. 1967)). The court further noted that "[a]ny grant of an easement necessarily carries with it the right to do such things as are reasonably necessary for the full enjoyment of the easement granted." *Id.* (citing *Harris v. Phillips Pipe*

20

*Line Co.,* 517 S.W.2d 361 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.)). The landowner, having granted an easement for a pipeline, has no right to make use of the surface that might interfere with the use of such easement. *Id.* (citing *Razo*, 420 S.W.2d at 695). Thus, "[i]f the landowner cannot interfere with the full enjoyment of the easement granted, ***certainly the lessee, who takes with knowledge that landowner retains rights to grant a right-of-way, may not interfere with the rights granted*.**" *Id.* at 159-60 (emphasis added).

The same is true in this case. TransCanada obtained the Easement from the Landowner, and is undeniably the owner of the dominant estate on the Property. As such, TransCanada had the ***contractual*** right to enter onto the Property and complete the construction and installation of the Pipeline pursuant to the terms of the Easement. TransCanada's construction and installation of the Pipeline was not only reasonably necessary for its full enjoyment of the Easement, it was the sole purpose for which TransCanada and the Landowner executed the Easement.

In short, there was no "taking." In order to enter the Property and construct its Pipeline, TransCanada was not required to establish that it was a common carrier under the Texas Natural Resources Code, and that the Pipeline was "to or for the public for hire." *See* Geheb's Br. at 11-16. Nor was TransCanada required to show that the tar sands to be transported through the Pipeline are considered "crude petroleum" under the Texas Natural Resources Code. *See id.* at 17.

21

Likewise, TransCanada did not have an obligation to provide Geheb with additional compensation for a "taking" that did not occur. *See id.* at 18.

For these same reasons, Geheb's argument that the trial court failed "to make preliminary inquiry into common carrier status" is equally meritless. *See id.* at 19-21 (acknowledging that TransCanada never instituted "proceedings to condemn Geheb's possessory interest"). No authority exists to support Geheb's contention that the trial court was required to make a preliminary finding as to TransCanada's status as an "entity with 'eminent domain authority,'" where TransCanada's right to enter the Property and construct the Pipeline was purely contractual and not obtained through condemnation. The discovery Geheb sought relating to TransCanada's common carrier status was entirely irrelevant to any issue in this case, its only purpose being to harass TransCanada.

## CONCLUSION AND PRAYER

For all of the foregoing reasons, TransCanada Keystone Pipeline, LP respectfully requests that the Court affirm the trial court's judgment, and award TransCanada such other and further relief to which it may be justly entitled.

Respectfully submitted,

**ZABEL FREEMAN**


By: ____/s/ *Thomas A. Zabel*_____
       Thomas A. Zabel
       State Bar No. 22235500
       James A. Freeman
       State Bar No. 00796580
       Nancy H. Elliott
       State Bar No. 08701240
       1135 Heights Blvd.
       Houston, Texas 77008
       Telephone:  (713) 802-9117
       Facsimile:  (713) 802-9114
       tzabel@zflawfirm.com
       jfreeman@zflawfirm.com
       nelliott@zflawfirm.com


       **GERMER, P.L.L.C.**
       Karen Bennett
       State Bar No. 21702640
       P.O. Box 4915
       Beaumont, Texas 77704
       Telephone:  (409) 654-6700
       Facsimile:  (409) 835-2115
       krbennett@germer.com

       **ATTORNEYS FOR APPELLEE TRANSCANADA KEYSTONE PIPELINE, LP**

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief was prepared in Times New Roman 14-point font, and contains 5,273 words, exclusive of the portions set forth in Rule 9.4(i)(1), and that this number was calculated using the word count program of Microsoft Word, which is the program that was used to prepare this document.

/s/ Nancy H. Elliott_____
Nancy H. Elliott

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellee TransCanada Keystone Pipeline, LP has been served electronically and via email on the following counsel of record this 13th day of December, 2017:

Robert Keith Wade
LAW OFFICES OF ROBERT KEITH WADE
650 North Ninth Street at McFaddin
Beaumont, Texas 77702
rwade-law@sbcglobal.net

/s/ *Nancy H. Elliott*_____
Nancy H. Elliott